879 F.2d 347
 131 L.R.R.M. (BNA) 3018, 58 USLW 2115,
112 Lab.Cas. P 11,336
 GEORGE A. HORMEL & COMPANY, Appellant,
v.
UNITED FOOD & COMMERCIAL WORKERS, LOCAL 9, AFL-CIO, Appellee.
UNITED FOOD & COMMERCIAL WORKERS, LOCAL 9, AFL-CIO,
v.
GEORGE A. HORMEL & COMPANY.
 No. 88-5352.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 22, 1988.
Decided July 12, 1989.
Rehearing En Banc Denied Aug. 18, 1989.
Rehearing Denied Aug. 21, 1989.
 
 Thomas P. Krukowski, Milwaukee, Wis., for appellant.
 Robert D. Metcalf, Minneapolis, Minn., for appellee.
 Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 George A. Hormel & Company (appellant or Hormel) appeals from an order of the district court confirming an arbitration award. The arbitration award was in favor of the appellee, United Food & Commercial Workers, Local 9, AFL-CIO. Because the arbitrator's award did not draw itself from the essence of the contract between appellant and appellee, we reverse.
 
 I. BACKGROUND
 
 2
 The genesis of this dispute was appellant's decision to significantly change the operation of its meat slaughtering and processing plant in Austin, Minnesota. Prior to January 13, 1988, appellant operated 20 percent of the Austin facility for the slaughtering of hogs. The remaining 80 percent was devoted to processing and packing. Members of appellee union are employed at the facility and, to date, perform all work for all operations on the premises.
 
 
 3
 On January 13, 1988, appellant ceased its slaughtering activity in Austin. It remodeled the Austin plant, changing it into two segregated facilities. It then leased the separate slaughtering facility to Quality Pork Processor, Inc. (Quality). Appellant purchased meat from Quality and processed it in its own separate processing and packing facility.
 
 
 4
 Appellee contends that the collective bargaining agreement with appellant requires that any slaughtering that takes place within the building or buildings of the Austin facility, as remodeled or as previously existing, must be performed by bargaining unit members. Appellee filed a grievance on March 8, 1988, alleging that performance of such labor by nonbargaining unit workers (employees of Quality) would be a violation of its contract with appellant.
 
 
 5
 A hearing was held. The arbitrator found in favor of appellee. The decision was rendered on June 6, 1988. The district court confirmed the award. This appeal followed.
 
 II. REVIEW OF AWARD
 A. Grievance Procedure
 
 6
 The agreement provides for arbitration to resolve disputes between the parties over the meaning and application of its provisions. Joint App. Vol. III at 360-61. "The arbitrator, in making his decision shall be bound and governed by the explicit provisions of this agreement * * * and shall have no power to add or subtract from, ignore or modify any of the provisions of this Agreement." Id. at 362, Sec. 11.2(c).
 
 B. Review
 
 7
 The parties commissioned the arbitrator to interpret and apply the collective bargaining agreement. The question before the court is whether the arbitrator made an award that draws its essence from the agreement. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 
 8
 It is the arbitrator's construction and application of the contract that was bargained for. Id. at 599, 80 S.Ct. at 1362. A court has no business overruling an arbitrator because the court's interpretation of the agreement is different from that of the arbitrator. Id. at 599, 80 S.Ct. at 1362. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) (emphasis added).
 
 III. APPELLANT'S CLAIM
 
 9
 Appellant raises three points to support its claim that the arbitrator did not premise his award on a construction of the agreement, and thus did not fulfill his obligation. First, it claims that the language of the agreement is in no way susceptible to the construction given it by the arbitrator. Second, appellant claims that the arbitrator's failure to discuss certain critical contract terms indicates that he did not use the contract as the basis of the award. Finally, appellant claims that consideration of its prior bargaining history with appellee was essential to the construction of the contract and that the absence of such consideration shows that the award was not based on the arbitrator's interpretation and construction of the agreement.
 
 
 10
 The district court carefully considered each claim separately and did not find sufficient evidence that the arbitrator had not fulfilled his responsibility. We have considered the claims as a group, and conclude that the arbitrator's decision manifests an infidelity to his obligation.
 
 A. Interpretation
 
 11
 Article III, Sec. 3.1(a) of the agreement states:
 
 
 12
 The Company recognizes the Union as the sole and exclusive bargaining representative of all production and maintenance employees * * * employed at the employer's meat and meat by-products facilities in Austin, Minnesota.
 
 
 13
 Joint App. Vol. III at 345.
 
 Section 3.1(b) of Article III provides:
 
 14
 The Union recognizes that except as otherwise provided in particular provisions of this Agreement, the Management of the Plant and the direction of working force, including the right * * * to transfer work to any other company locations or subcontract work is vested exclusively in the Company, provided that this will not be used * * * in such a manner so as to avoid any provisions of this Agreement.
 
 
 15
 Id. (emphasis added). The arbitrator concluded that these two sections, taken together, mean that meat packing employees "at the Austin, Minnesota plant should be bargaining unit employees." Arbitrator's Opinion and Award (June 6, 1988) at 8. Appellant argues that the contract language pertaining to leasing and subcontracting is so clear and unambiguous and not susceptible to the construction given, that the arbitrator, through his award, actually modified the contract and "for this reason his award does not draw its essence from the contract and should be vacated." Brief of appellant at 15.
 
 
 16
 The Tenth Circuit has held that it will not interfere with an arbitrator's decision "unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." Sterling Colo. Beef Co. v. United Food & Com. Workers, 767 F.2d 718, 720 (10th Cir.1985) (citation omitted); accord NCR Corp. v. Machinists Lodge 70, 128 L.R.R.M. (BNA) 3024, 3027-28 (D.Kan.1988). We do not believe that such a showing, standing alone, is sufficient to vacate an award.
 
 
 17
 This court cannot find that the arbitrator failed to construe the agreement at issue simply because we believe that the language of the agreement is plain, unambiguous and not susceptible to the particular construction given by the arbitrator. This would result in a reversal based upon our perception that the arbitrator committed serious error in his interpretation. Such a result is forbidden by Misco. See 484 U.S. at ----, 108 S.Ct. at 371.
 
 
 18
 On the other hand, this court has vacated awards where the award's result is one so contrary to common experience and logic that it is more likely than not that such result was not the intent of the parties, and where additional facts exist that strongly indicate that the arbitrator did not premise his award on the contract, notwithstanding his words to the contrary. See Beardsly v. Chicago & North Western Transportation Co., 850 F.2d 1255, 1268-70 (8th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1340-41, 103 L.Ed.2d 810 (1989) (vacating award where arbitration was tainted by unfair representation and where award relied on an invalid agreement and result mandated by the award did not make sense in light of ordinary experience); see also Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184, 187-88 (8th Cir.1988) (finding language plain and unambiguous, but also finding that the arbitrator disregarded it).
 
 
 19
 The arbitrator was construing the contract when he concluded that all killing and processing employees at Austin, Minnesota, must be bargaining unit employees, so long as the activity occurred anywhere in or on the original Austin facility. Arbitrator's Opinion and Award at 8. According to this interpretation, the appellant could construct a facility next door and lease and subcontract at will without violating the agreement, but by doing the same thing through remodeling and leasing part of the Austin premises, the agreement is violated. District Court Order (Aug. 11, 1988) at 8. The inconsistency of this result in the face of unambiguous language in the contract, gives the other claims advanced by appellee added significance.
 
 B. Evaluation of Terms
 
 20
 Appellant argues that Article XV, Sec. 15.2 of the agreement is an essential provision, which when considered, compels the conclusion that appellant had the right to lease part of the facility to Quality and to allow Quality to hire nonbargaining unit employees to perform meat packing services on the leased premises. The section provides:
 
 
 21
 For purposes of this Article, "plant closing" shall be defined as a complete closure of the plant by the Company with no employees represented by the Union remaining employed. The notice of provision of this Article shall not apply in the event the Company sells, transfers, assigns, leases, conveys, or otherwise disposes of its operations, in whole or in part, covered by this Agreement.
 
 
 22
 Joint App. Vol. III at 373. When there is a "plant closing" appellant must give six months notice. Id. at Sec. 15.1. Appellant claims that sentence two of section 15.2 was ignored and the conduct of the arbitrator in so doing shows that his decision was not based on his construction of the contract. Appellee argues that the second sentence deals only with notification requirements that have nothing to do with the matters at issue in this dispute such as the right of Hormel to lease, transfer or convey parts of the Austin operations. We disagree with appellee in this regard. Article XV, of which sections 15.1 and 15.2 are a part, covers a range of subjects far beyond a "plant closing." The limited use of sentence two of section 15.2 requested by appellee would require, it seems to us, overly restrictive application of rather straightforward language.
 
 
 23
 This circuit has reversed awards where relevant language was not considered by the arbitrator. See Beardsly, 850 F.2d at 1263. Similarly, where a decision does not account for essential clauses and does not give a reason for the failure to mention essential clauses, the award has been vacated because such shortcomings are an indication that the arbitrator has not interpreted the specific contract at issue. See Trailways Lines v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1423-25 (8th Cir.1986) (holding that failure to discuss seemingly relevant language in the labor agreement, in conjunction with questionable references to a decision by the arbitrator in another case, established that the award at issue did not draw its essence from the agreement).
 
 
 24
 We do not believe that the wording and application of the lease provision is as unambiguous as appellant contends. Nor do we believe, as earlier indicated, that the lease language can fairly be read only in connection with the notice section as appellee suggests. Section 15.2 states, or at least clearly suggests, that a lease is a proper vehicle through which a part of the meat packing operations may be disposed of or transferred to another by Hormel. The language may be construed as an absolute right to lease and subcontract, or, inferentially, only as a right to dispose of part of the operations (through leasing) which disposal, in conjunction with section 3.1, would require that bargaining unit employees still perform the meat packing functions, if any are to be conducted by the lessee. However, given the language of section 3.1(b) and the requirements of section 11.2(c), we think the latter interpretation is untenable, even in the context of the broad authority given a labor arbitrator.
 
 
 25
 Analysis and discussion of section 15.2 would have helped to determine whether a lessee's facility should still be considered the "employer's" facility for purposes of section 3.1(a). This, in turn, would have helped to determine whether the separate, leased facility has to be staffed with bargaining unit employees.
 
 
 26
 We believe that where an arbitrator fails to discuss a probative contract term and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract.[1] Cf. Clinchfield Coal Co. v. District 28, United Mine Workers, 720 F.2d 1365, 1369 (4th Cir.1983) (holding that a failure to discuss critical terminology, which terminology might reasonably require an opposite result, means that award cannot be considered to draw its essence from the contract).
 
 C. Prior Negotiations
 Article II, 2.2 provides:
 
 27
 (a) Any and all past practices, or agreements, express or implied, not expressly set forth herein, which may have been in existence shall have no significance, for purposes of contract interpretation or otherwise, and are hereby terminated. No evidence of such terminated practices or agreements shall be admissible in any proceedings between the parties, including those involving arbitration, administrative agency matters, and court proceedings, and no arbitrator shall have jurisdiction or authority to give consideration to, or base any award, in whole or in part, upon any such agreements or practices.
 
 
 28
 Joint App. Vol. III at 344.
 
 
 29
 Appellee contended at the arbitration hearing that this provision prohibits the arbitrator from considering prior contract negotiations. Appellant disagreed. Appellant sought to show that during negotiations for a contract in 1978, appellee proposed the following language, which was rejected: "All work presently performed by bargaining unit employees may only be performed by bargaining unit employees except as explicitly provided." Joint App. Vol. II at 238. The arbitrator admitted the language into evidence having construed section 2.2 narrowly as precluding from consideration only past practices or agreements and as not precluding consideration of prior negotiations. See id. at 236-38. We believe that the arbitrator was correct in this approach.
 
 
 30
 At times, like here, evidence of prior negotiations is essential to ascertain the rights and obligations of the parties under the current contract. See Rainbow Glass Co. v. Local Union 610, 663 F.2d 814, 817 (8th Cir.1981). In this case, the arbitrator received the evidence but did not discuss the prior negotiations in his decision. We are troubled by this because the right granted by the arbitrator's decision is, essentially, one expressly rejected during an earlier collective bargaining process. And, there is a strong policy not to impose by judicial implication a right that was purposely deleted during the bargaining process. See Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 221-22, 100 S.Ct. 410, 416, 62 L.Ed.2d 394 (1979).
 
 IV. CONCLUSION
 
 31
 All things considered, we are convinced that the arbitrator's award did not draw its essence from an interpretation of explicit provisions of the contract. While reasonable minds may differ on the meaning of sections 3.1(a) and (b), any meaning conferred cannot be applied without at least some consideration of the lease provisions contained in sentence two of section 15.2. Again, the lease language of section 15.2 may also be susceptible to varying interpretations. However, you simply cannot assume that Hormel had the right to dispose of meat packing operations, in whole or in part, at the Austin plant through real estate lease agreements, and assume that the employees on the leased premises continued to be Hormel employees or, in the alternative, employees of someone conducting "in-house subcontracting." This is especially true if you give any viability, which you must, to section 11.2(c) of the collective bargaining agreement.
 
 
 32
 Accordingly, the award is vacated.
 
 
 33
 WOLLMAN, Circuit Judge, dissenting.
 
 
 34
 I respectfully dissent. I would affirm the order confirming the arbitration award. To hold that the arbitrator ignored the plain language of the contract by not specifically referring to the second sentence of Article XV, section 15.2, seems to me to be an overly restrictive view of the arbitrator's role. This is all the more true in light of the fact that section 15.2 does not compel the interpretation Hormel places on it. If this were other than an appeal from an arbitrator's award, I might very well agree with the majority opinion. Given the extremely narrow range of our review in such cases, however, I must conclude that under the principles set forth in United Paperworkers Int'l v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), I cannot say that the arbitrator's award did not draw its essence from the contract. Accordingly, the district court's order should be upheld.
 
 
 
 [1]
 The arbitrator framed the issue as one solely of whether " 'in house subcontracting' is proper under the terms of the contract." Arbitrator's Opinion and Award at 10. The district court, stating that "[t]he bottom line is that the arbitrator found that having non-bargaining unit personnel providing raw product from a company facility to union personnel in another portion of that same company facility cannot occur and still maintain the integrity of contractual mandates," District Court Order at 8 (emphasis added), also seems to have evaluated the arbitrator's order under the same rationale. However, a valid real estate lease of specific segregated facilities, if permitted under the contract, would not appear to make the Quality facility a company facility or, more properly, the "employer's facilities" as contemplated by section 3.1(a) of the collective bargaining agreement. If not, activities carried out on the leased premises would not constitute "in-house subcontracting" as envisioned by the arbitrator. Thus, consideration of this portion of the contract was crucial to any decision drawing its essence from the collective bargaining agreement