**IOWA MOLD TOOLING CO., INC., Plaintiff,**

v.

**TEAMSTERS LOCAL UNION NO. 828, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, AFL–CIO, Defendant.**

Civ. No. 4–92–CV–10583.

United States District Court, S.D. Iowa, Central Division.

April 13, 1993.

Thomas M. Cunningham, Shearer, Templer & Pingel, West Des Moines, IA, for plaintiff.

Neil A. Barrick, Barrick Law Office, Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, District Judge.

The Court has before it Plaintiff Iowa Mold Tooling Company, Inc.'s ("IMT") Motion for Summary Judgment, filed December 8, 1992. Defendant Teamsters Local Union No. 828 ("the Union") resisted the motion on January 8, 1993, and Plaintiff filed a reply brief on January 29, 1993.

This Court has jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

### I.  Background

In the fall of 1991, the parties began negotiating a renewal of their collective bargaining agreement, which was to expire November 1, 1991. On December 20, 1991, once it appeared a new agreement would not be reached, the Union called a strike. IMT continued operations, replacing the striking workers with newly-hired employees and "cross-overs." Cross-overs are union employees hired by IMT before December 20, 1991, who chose not to participate in the strike. On January 7, 1992, IMT issued a letter to striking employees stating that if the strikers did not return to work by January 13, 1992, IMT would fill their positions with permanent replacements.

January 13 arrived and the strike had not ended. According to IMT, striking workers who had not returned to work were permanently replaced on that date. The arbitrator found no evidence to dispute this fact. *See* Exhibit A to Plaintiff's Statement of Material Facts, at 10 [hereinafter, "Arbitration Award"].

The parties met again on January 15, 1992, and reached a temporary agreement. Because the parties could not agree as to the post-strike treatment of cross-over employees, the agreement contained the following language: "It is the Company's position that employees hired since December 20, 1991 and crossovers since that date shall be provided continued employment, the Union has the right to challenge."

Shortly thereafter—but before the new collective bargaining agreement was ratified—IMT sent "*Belknap*" letters [1] to each of the permanent replacement workers (both new hires and cross-overs). The letters requested the employees to sign a statement acknowledging that if the National Labor Relations Board, a court or an arbitrator ordered IMT to reinstate the displaced strikers, IMT was obligated to abide by the order.

The temporary collective bargaining agreement reached by the Union and IMT was ratified by the Union on January 17, 1992. The parties agreed the contract should apply retroactively beginning November 1, 1992, with an expiration date of October 31, 1994. Beginning January 20, 1992, IMT recalled striking workers to vacant positions, but retained all permanent replacement workers. Striking employees for whom there were no vacancies immediately filed a grievance under the current collective bargaining agreement seeking reinstatement. IMT denied the grievance, and it was referred to arbitration before Clifford E. Smith. Under the terms of the collective bargaining agreement, arbitration awards must be "according to law."

Arbitrator Smith held an evidentiary hearing on the matter, and issued his award on July 30, 1992. The first prong of the award—which IMT does not contest—al-

lowed IMT to retain its newly-hired workers after the termination of the strike. However, Arbitrator Smith also required IMT to replace the cross-over employees with returning full-time strikers if the latter had seniority over the cross-over employees at issue. Arbitrator Smith expressly acknowledged that this requirement was contrary to the United States Supreme Court's majority decision in *Trans World Airlines, Inc., v. Independent Federation of Flight Attendants*, 489 U.S. 426, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989).

IMT filed this action to vacate the second prong of the arbitrator's award, arguing the provision is contrary to law, thereby violating the collective bargaining agreement. IMT now seeks summary judgment on the basis that there are no material facts in dispute.

II.  Applicable Law and Discussion

A.  Issues of Material Fact

■ Summary judgment is properly granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir. 1982). In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give that party the benefit of all reasonable inferences. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986).

Nevertheless, the resisting party must set forth specific facts showing there is a genuine issue for trial and may not rely solely on legal conclusions to prove there is a genuine

---

1. *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), was a suit filed by employees who had been hired by the respondent employer during a strike under the promise that they would be permanent employees. When the employer nevertheless laid off many of these "permanent" replacements pursuant to a settlement reached with the striking union, the laid off replacement workers sued the employer for misrepresentation and breach of contract. *Id.* at 493–97, 103 S.Ct. at 3174–76. The United States Supreme Court held that their state law causes of

action were *not* pre-empted by the National Labor Relations Act. *Id.* at 500–04, 103 S.Ct. at 3177–79.

As a result of this decision, employers hiring "permanent" replacement workers sometimes send letters to the replacements alerting them they may nevertheless be displaced if the NLRB, a court or arbitrator orders the company to reinstate strikers. The letter helps protect the company from breach of contract or misrepresentation claims that may be filed in the event the "permanent" replacements are laid off.

issue of material fact justifying denial of summary judgment. Fed.R.Civ.P. 56(e).

The Court finds the sole alleged issue relative to the arbitrator's decision regarding cross-over employees is whether the striking employees were in fact permanently replaced on January 13, 1992. The *only* evidence provided on this issue is the January 7, 1992 letter sent to striking workers informing them they would be permanently replaced if they did not return to work by January 13, 1992, and the affidavit of Plaintiff's President and Chief Executive Officer stating that "striking employees who had not returned to work by January 13, 1992, were permanently replaced by new hires and crossovers on that date." Exhibit B to Plaintiff's Statement of Material Facts, at 2.

■ In resisting a motion for summary judgment, a party "may not rest upon the mere allegations or denials of the adverse party's pleading ... but must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co*, 958 F.2d 836, 838 (8th Cir.1992) (" '[T]he [non-movant] must present affirmative evidence in order to defeat a properly supported motion for summary judgment' " *quoting Anderson v. Liberty Lobby*, 477 U.S. at 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). In the present case, the Union was unable to provide any evidence disputing the fact the strikers were permanently replaced.

■ Moreover, Arbitrator Smith's award noted the lack of evidence to support Defendant's allegations, and concluded the striking workers had been permanently replaced. Arbitration Award, at 10. It is well recognized that factual findings made by a designated arbitrator must be given the highest deference by reviewing courts. *Coca–Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1442 (8th Cir.1992); *Franklin Elec. Co. v. Int'l. Union, UAW*, 886 F.2d 188, 192 (8th Cir.1989). The Court therefore finds the strikers were in fact permanently replaced on January 13, 1992. In light of the arbitrator's decision and absent genuine issues of material fact in resistance to the present motion, this case is appropriately submitted for summary judgment.

## B. Review of the Award

■ Courts are reluctant to reverse arbitration awards. *George A. Hormel & Co. v. United Food and Commercial Workers, Local 9*, 879 F.2d 347, 349 (8th Cir.1989). " '[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' " *Coca–Cola Bottling Co. v. Teamsters Local 688*, 959 F.2d 1438, 1440 (8th Cir.1992) (*quoting United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

■ However, the arbitrator's decision may not ignore the plain language of the contract, and must derive its essence from the collective bargaining agreement. *Id.; United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). " '[The arbitrator] does not sit to dispense his own brand of industrial justice.' " *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361.

Article 15 of the collective bargaining agreement, which governs the processing of grievances, provides in part:

(d) The Arbitrator shall have no authority to add to, subtract from, or in any way modify the provisions of this Agreement. The decision of the Arbitrator shall be within the authority herein granted and *according to law;* shall be in writing and shall include the reasons for each finding and conclusion; and shall be rendered within ten (10) days following the date of the last hearing unless an extension is agreed upon by the parties.

Exhibit C to Plaintiff's Statement of Material Uncontested Facts, Art. 15, step (3)(d) (emphasis added). Ironically, Arbitrator Smith made special note of the fact his decision must conform to federal law, and proceeded to identify the United States Supreme Court decision governing the issue. Arbitration Award, at 11. In *Trans World Airlines v.*

*Indep. Fed'n of Flight Attendants,* 489 U.S. 426, 438, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989), the Court held that an employer is not statutorily required to displace cross-over employees in favor of senior returning strikers. *Id.* at 432–33, 109 S.Ct. at 1229–30 (*citing NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 910–11, 82 L.Ed. 1381 (1938)). Specifically, the Court reasoned:

> To distinguish crossovers from new hires in the manner IFFA proposes would have the effect of penalizing those who decided not to strike in order to benefit those who did. Because permanent replacements need not be discharged at the conclusion of a strike in which the union has been unsuccessful, a certain number of prestrike employees will find themselves without work. We see no reason why those employees who chose not to gamble on the success of the strike should suffer the consequences when the gamble proves unsuccessful.

The above language clearly indicates a broad mandate preventing employers and unions from differentiating between new-hires and cross-overs. *See Waterbury Hospital v. NLRB,* 950 F.2d 849, 854 (2d Cir.1991) (Right of employers to hire permanent replacements "may be applied not only to new hires but also to employees who cross the picket line and are assigned permanently to positions other than those they occupied before the strike.")

Rather than abiding by the Supreme Court's mandate, however, the arbitrator opts to follow Justice Brennan's *Trans World* dissent:

> There is no doubt but that in [*Trans World Airlines v. Independent Federation of Flight Attendants,* 489 U.S. 426, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989)] the Court did rule that TWA "was not required by the Railway Labor Act[2] to displace flight attendants who worked during the strike in order to reinstate striking flight attendants with greater seniority." We note that this decision was a split decision by the Court, five (5) to four (4), and Justice Brennan filed a dissenting opinion which was joined by Justice Marshall. We found

Brennan's dissenting opinion to be most instructive and very applicable to this case.

Arbitration Award, at 11 (citations omitted). The arbitrator makes no attempt to distinguish the facts of the present case from *Trans World Airlines,* in an attempt to show why the latter is not proper authority. Rather, he quotes a portion of the dissent in which Justice Brennan opines that the majority reached " 'an incorrect conclusion.' " Arbitration Award, at 11.

The mere fact he *disagrees* with Supreme Court precedent does not relieve the arbitrator from his duty to abide by it. It is clear Arbitrator Smith understood " 'and correctly state[d] the law, but proceed[ed] to disregard the same.' " *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 750 (8th Cir.1986) (*quoting San Martine Compania de Navegacion v. Saguenay Terminals, Ltd.,* 293 F.2d 796, 801 (9th Cir.1961)). This is not a situation in which an arbitrator simply misinterpreted the applicable law. *See Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953) (error in interpretation not sufficient basis for vacating arbitration award). Clearly, in this instance, the arbitrator was dispensing "his own brand of industrial justice." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361.

Furthermore, the Court finds the arbitrator's reasoning that the *Belknap* letters signed by each individual replacement worker were collective bargaining agreements to be incorrect. There was no "collective bargaining" involved. *See* Arbitration Award, at 11.

## III. CONCLUSION

In the present case, the Court finds Arbitrator Smith ignored the plain language of a material provision within the collective bargaining agreement—namely, that his decision must be "according to law." Arbitrator Smith's decision is not derived "from the essence" of the contract.

Accordingly, IMT's motion for summary judgment is hereby GRANTED. The por-

---

**2.** The *TWA* Court reached the same conclusion under the NLRA.

tion of the arbitrator's award requiring IMT to displace cross-over employees with senior returning strikers is vacated.

IT IS SO ORDERED.