**IOWA MOLD TOOLING COMPANY, INC., Appellee,**

v.

**TEAMSTERS LOCAL UNION NO. 828, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, AFL–CIO, Appellant.**

No. 93–2315.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1994.

Decided Feb. 11, 1994.

Counsel who represented the appellant was Nick Barrick, Des Moines, IA.

Counsel who represented the appellee was Richard M. Lyon, Jeremy P. Sherman, Lisa A. Lopatka, Chicago, IL; Leon R. Shearer, Thomas M. Cunningham, West Des Moines, IA.

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and STROM,* Chief District Judge.

BEAM, Circuit Judge.

Teamsters Local Union No. 828 appeals the district court's[1] partial vacation of an

---

* The Honorable Lyle E. Strom, Chief Judge of the United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

arbitrator's award. —— F.Supp. ——. We affirm.

Following expiration of a collective bargaining agreement between Iowa Mold Tooling Co., Inc. (IMT) and the Teamsters Local (Union), an economic strike was commenced by the Union and its members in support of certain demands advanced during collective bargaining. IMT continued to operate during the strike by using non-striking (crossover) employees represented by the Union and newly hired personnel.

IMT sent a letter on January 7, 1992, stating that striking employees should return to work by January 13, 1992, or the company would commence to hire permanent replacements. The strike did not end by that date.

As the strike was nearing an end through a temporary agreement, IMT sought and obtained the signatures of the new hires and crossovers on a "*Belknap* letter." *See Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). In this way, the letter recipients were informed that the permanent employment previously extended by IMT was conditioned upon the company's obligation to abide by an order of the National Labor Relations Board, a court or an arbitrator.

When the strike ended, IMT recalled some striking employees but refused to displace the new hires and the crossovers. Striking employees who were not permitted to return to work filed grievances, arguing that they should replace individuals with less seniority with IMT. The Union and IMT could not reach agreement on this issue and the matter proceeded to arbitration.

The arbitrator held that "all 'new hires' shall not be affected by the remedy ordered in this case." Joint Appendix at 19. He then ordered the company to return "all bargaining unit workers to work ... based upon seniority...." Id. He further directed that when the company retained a less senior crossover, the more senior striker "shall be remunerated with any lost wages and benefits, less any earned income received by that employee before returning to work...." This result is legally incorrect and must be vacated.

The district court appropriately noted that this court has repeatedly expressed its reluctance to reverse an arbitration award. *George A. Hormel & Co. v. United Food and Commercial Workers, Local 9*, 879 F.2d 347, 349 (8th Cir.1989). " '[A]s long as the arbitrator is even arguably construing or applying the [collective bargaining agreement] and acting within the scope of his authority, that a court *is convinced he committed serious error* does not suffice to overturn his decision.' " *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39, 108 S.Ct. 364, 366, 98 L.Ed.2d 286 (1987)) (emphasis in *Hormel*). The arbitrator's decision may not, however, ignore the plain language of the contract, and must "derive its essence" from the collective bargaining agreement. *Coca-Cola Bottling Co. v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Here, that clearly did not occur.

As also correctly noted by the district court, Section 15.1, Step 3(d) of the collective bargaining agreement, which governs the actions of the arbitrator, provides in part:

(d) The Arbitrator shall have no authority to add to, subtract from, or in any way modify the provisions of this agreement. The decision of the arbitrator shall be within the authority herein granted and *according to law; ...*

Joint Appendix at 26 (emphasis added). And, although the arbitrator stated that he must conform to federal labor law to comply with this provision, he promptly abandoned his own admonition to do so. *Id.* at 15.

The law governing the rights of crossover workers in a situation such as that presented in this dispute was established by the Supreme Court in *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989). Interestingly, the arbitrator expressly noted and rejected the majority holding in *Trans World Airlines* and adopted the dissenting opinion, stating that it (the dissent) was "most instructive and very applicable to this case." Joint Appendix at 17. This action was, of course, a misuse of Supreme Court precedent. The district court, charitably and euphemistically, charac-

terized this order of the arbitrator as an act of dispensing "his own brand of industrial justice." *Id.* at 104. Such an undertaking is, of course, prohibited by *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Specifically, the Supreme Court, in *Trans World Airlines,* stated:

> To distinguish crossovers from new hires [in returning individuals to work after a strike] would have the effect of penalizing those who decided not to strike in order to benefit those who did. Because permanent replacements need not be discharged at the conclusion of a strike in which the union has been unsuccessful, a certain number of prestrike employees will find themselves without work. We see no reason why those employees who chose not to gamble on the success of the strike should suffer the consequences when the gamble proves unsuccessful.

*Trans World Airlines,* 489 U.S. at 438, 109 S.Ct. at 1233. That is precisely the situation presented in this dispute. Strikers with more seniority seek to displace crossovers lower on the seniority list or, in the alternative, seek to require the employer to pay the strikers for not working. The arbitrator, required by Section 15.1 of the agreement to make a decision "according to law," simply opted not to follow the mandate of the Supreme Court. As a result, his decision did not, as noted by the district court, "derive its essence" from the contract. Thus, the arbitrator's decision cannot be enforced.

Accordingly, the summary judgment of the district court vacating the return to work portion of the arbitration order was correct. The judgment is affirmed.