# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3239

_____

Parsons Electric, LLC

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 14-3562

_____

National Labor Relations Board

*Petitioner*

v.

Parsons Electric, LLC

*Respondent*

_____

National Labor Relations Board

_____

Submitted: October 21, 2015
Filed: February 9, 2016

_____

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Parsons Electric, LLC petitions for review of an order of the National Labor Relations Board. The Board concluded that Parsons engaged in an unfair labor practice in violation of sections 8(a)(1) and (5), 29 U.S.C. § 158(a)(1), (5), of the National Labor Relations Act (Act), 29 U.S.C. §§ 151-169, when it unilaterally changed the written employee-break policy set forth in its employee handbook without first notifying the International Brotherhood of Electrical Workers, Local No. 110 (Union) and affording the Union an opportunity to bargain.[1] The Board cross-petitions for enforcement of its order. We deny the petition for review and enforce the Board's order.

Parsons, an electrical subcontractor, is located in the Twin Cities area and does business throughout the United States. The Union is the exclusive collective-bargaining representative for Parsons electricians, foremen, and general foremen in the greater St. Paul, Minnesota, area. In 2003, Parsons authorized the St. Paul Chapter of the National Electrical Contractors Association (Association) to act as its "bargaining representative for all matters contained in or pertaining to" the collective-bargaining agreement (CBA) with the Union. Although the CBA was silent on the issue of employee breaks, Parsons had separately maintained a written employee-break policy that applied to employees represented by the Union since at least January 2005 (2005 Break Policy). The 2005 Break Policy provided:

_____

[1]The Board also concluded that Parsons violated the Act by unreasonably delaying compliance with the Union's request for information. Because Parsons does not contest this determination, we enforce the Board's order as to this issue without further comment.

-2-

It is the policy of Parsons Electric to provide all hourly personnel with a 15 minute break in the morning and a 15 minute break in the afternoon of each workday. Each jobsite will establish specific break policies as part of the jobsite expectations and the policy may be materially different than the standard break duration described above. Under no circumstances are these breaks to be substituted for a reduced work day without permission from Parsons President.

The 2005 Break Policy was incorporated into the Parsons employee handbook in 2009. Parsons maintained the employee handbook under the CBA's management-rights clause, which permitted Parsons to implement workplace rules and regulations so long as they were not inconsistent with the terms of the CBA. In February 2012, Parsons replaced the 2005 Break Policy with a new policy (2012 Break Policy), which stated:

Parsons Electric abides by the applicable collective bargaining agreements and laws with respect to all breaks. In the absence of specific provisions for breaks in the collective bargaining agreement, Parsons may establish specific break policies as part of the jobsite expectations.

When the 2012 Break Policy was adopted, the CBA was still silent on the issue of employee breaks. The 2012 Break Policy was incorporated into the Parsons employee handbook in 2013, with no notice being given to the Union.

In April 2013, more than a year after the 2012 Break Policy was adopted, a number of Parsons employees reported to the Union that Parsons had not been permitting afternoon breaks or early departures in lieu of breaks. In response to the Union's request for clarification, Parsons informed the Union that it had revised its

written employee-break policy as described above.[2]  The Union then filed its unfair-labor-practice charge.

In April 2014, an administrative law judge (ALJ) held a hearing, at which the parties presented conflicting testimony and other evidence on two questions:  (1) whether Parsons had maintained a past practice of offering an afternoon break or early departure and (2) whether that practice was actually changed by the 2012 revision to the employee-break policy.  The ALJ concluded that Parsons had engaged in an unfair labor practice as charged by unilaterally changing the employee-break policy set forth in its employee handbook, reasoning that, "regardless [of] whether [Parsons] actually modified employee hours, the . . . .  change related to a term and condition of employment, which in turn is a mandatory subject of bargaining notwithstanding . . . past practice."  On review, the Board affirmed the ALJ's rulings, findings, and conclusions, with certain modifications, and it ordered Parsons to rescind the 2012 Break Policy.  Parsons's petition for review argues that there is not substantial evidence on the record as a whole to support the Board's finding that Parsons violated the Act.  Parsons also argues that, because it delegated its bargaining authority to the Association, it could not have bargained with the Union regarding the employee-break policy.

We will uphold the Board's decision on review if it correctly applied the law and if its factual findings are supported by substantial evidence on the record as a whole.  Litton Microwave Cooking Prods. v. NLRB, 949 F.2d 249, 251 (8th Cir. 1991).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Miss. Transp., Inc. v. NLRB, 33 F.3d 972, 977 (8th Cir. 1994) (citations omitted).  "Where either of two inferences may

_____

[2]The parties appear to agree that Parsons regularly allowed morning breaks both before and after it adopted the 2012 Break Policy.  Because the parties focus their arguments on whether the 2012 Break Policy affected afternoon breaks and early departures, we limit our discussion to those arguments.

reasonably be drawn from the facts, and the Board finds one of the inferences to be true, we are bound by the Board's finding even if [we] would have made a different choice were the matter before us *de novo*." Litton Microwave, 949 F.2d at 252; see also Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992) (observing that a reviewing court "should not supplant [an] agency's findings merely by identifying alternative findings that could be supported by substantial evidence").

Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" their rights under the Act. 29 U.S.C. § 158(a)(1). Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." Id. § 158(a)(5). An employer violates these sections if, prior to reaching an impasse in bargaining with a union, it makes a unilateral change in existing terms or conditions of employment. See Litton Microwave, 949 F.2d at 251. The terms and conditions of employment include employee breaks, even when the subject of employee breaks is not set forth in a CBA. See Rangaire Co., 309 N.L.R.B. 1043, 1043 (1992) (concluding that employee breaks are a mandatory subject of bargaining and that unilateral elimination of an extra fifteen-minute paid lunch break for the Thanksgiving holiday was a material, substantial, and significant change in unit employees' wages and working conditions), aff'd mem., 9 F.3d 104 (5th Cir. 1993). Unilateral changes in the terms and conditions of employment are generally prohibited because they circumvent the employer's duty to negotiate and interfere with the objectives of the Act. See Litton Microwave, 949 F.2d at 251. Notwithstanding these pronouncements, the Board has determined that not every unilateral change in the terms and conditions of employment violates the Act. Rather, such a unilateral change must be "material, substantial, and significant" before it is found to violate the Act. Rangaire Co., 309 N.L.R.B. at 1043 (citation omitted).

As the agency with "the primary responsibility [for] marking out the scope . . . of the statutory duty to bargain," the Board's construction of the Act is

"entitled to considerable deference" and must be upheld if it is "reasonably defensible." Ford Motor Co. v. NLRB, 441 U.S. 488, 495, 496-97 (1979). We will not reject the Board's interpretation of the Act "merely because [we] might prefer another view of the statute." Id. at 497; see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (noting that when Congress has not directly spoken on the precise issue, the question for the reviewing court is whether the agency's position "is based on a permissible construction of the statute").

Parsons does not dispute that when it replaced the 2005 Break Policy with the 2012 Break Policy, it unilaterally revised the language of the break policy without notifying the Union or affording it an opportunity to bargain. It argues, however, that its actions did not violate the Act because the revision to the break-policy language did not constitute a material, substantial, or significant change in the terms and conditions of employment. We disagree.

The 2005 Break Policy set forth a specific, concrete standard by which employee breaks would be measured. It set forth a default rule under which employees were generally entitled to a fifteen-minute break in the morning and either a fifteen-minute break or early departure in the afternoon—and it fixed employee expectations accordingly. To be sure, Parsons retained discretion to override the two-break standard if the particular "jobsite expectations" so required, but under the 2005 Break Policy, that discretion would be exercised as an exception to the default rule. The 2012 Break Policy, by contrast, eliminated the default rule with respect to employee breaks and instead granted Parsons unfettered discretion to determine whether employee breaks would be permitted at all and, if they were permitted, when they would occur and how long they would last. Although the 2012 Break Policy assured employees that Parsons would abide by any employee-break policy included in the CBA, the CBA was silent on the matter of employee breaks, leaving employees with no expectations and Parsons with absolute discretion. As the Board observed, "[i]nstead of an expectation that they [would] have a morning break and an afternoon

break or, alternatively, early departure, employees [were] . . . bound by [the 2012 Break Policy,] which diminishe[d] the role of breaks as a term of employment" and left "the daily decision up to the unfettered discretion the [jobsite] supervisor." Given the considerable deference we owe to the Board's assessment of materiality, we conclude that the Board reasonably determined that Parsons effected a material unilateral change to its terms and conditions of employment when it adopted the 2012 Break Policy. See Ford Motor Co., 441 U.S. at 501 (deferring to the Board's determination that an increase in the prices of in-plant food services was not "too trivial" to qualify as a material unilateral change in the terms and conditions of employment because "even minor increases in the cost of meals can amount to a substantial sum of money over time"); Litton Microwave, 949 F.2d at 252 (deferring to Board's conclusion that discontinuing an additional thirty minutes' paid lunch break at Christmas was a material change in the terms and conditions of employment). In light of this conclusion, we reject Parsons's related argument that the 2012 Break Policy was a mere clarification of the 2005 Break Policy. Cf. Allied Mech. Servs., Inc., 320 N.L.R.B. 32, 32 (1995) (concluding that there was no violation of the Act when an employer issued a written clarification of an existing pay policy set forth in the employee handbook), enforced, 113 F.3d 623 (6th Cir. 1997).

Parson also contends that the 2012 Break Policy did not constitute a material unilateral change in the terms and conditions of employment because it merely clarified an existing practice, namely that Parsons had historically exercised its discretion to either allow afternoon breaks—or not—depending on jobsite circumstances. In rejecting this assertion, the Board credited evidence and testimony that, prior to 2012, the typical practice at Parsons jobsites was to follow the default standard set forth in the 2005 Break Policy. The Board noted in particular that, with respect to afternoon breaks, Parsons Superintendent Brad Bacon testified that prior to the adoption of the 2012 Break Policy, "[t]he general practice was the bigger projects driven by the customer or the general [contractor, employees] would probably take a break," while "[o]n the smaller projects, [employees] left at 3:15"

instead of taking an afternoon break. The Board also credited the testimony of several long-term Parsons employees, each of whom testified that, prior to the adoption of the 2012 Break Policy, it had been Parsons's standard practice to allow employees to take an afternoon break or to leave early in lieu of that break.[3] Parsons argues that because the record includes testimony and evidence that detracts from the Board's findings, the Board's determination that the 2012 Break Policy did not clarify an existing practice was not supported by substantial evidence. But the issue here is whether substantial evidence supports the Board's conclusion, not whether evidence exists to support Parsons's alternative view. See Arkansas v. Oklahoma, 503 U.S. at 113 ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."). As set forth above, we will affirm as long as the Board correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole. See Nichols Aluminum, LLC v. NLRB, 797 F.3d 548, 553 (8th Cir. 2015). The Board evaluated the entire record in this case, weighed the conflicting testimony and other evidence, and rejected the evidence that may have supported Parsons's position. That we might have reached a different decision had the matter been before us *de novo* is not controlling. The Board's findings were supported by substantial evidence on the record as a whole. Accordingly, we conclude that the Board reasonably rejected Parsons's assertion that the 2012 Break Policy merely clarified existing practice.

Finally, Parsons contends that because it authorized the Association to act as its representative in negotiations with the Union, it was prohibited from bargaining directly with the Union prior to the revision of its employee-break policy. Parsons

---

[3]Specifically, Matthew Ohmann testified that the long-established industry standard was for employees to take afternoon breaks or leave early. Scott LaPlante and Mark Weiss each testified that in his experience, employees either took afternoon breaks or left early. The record also included testimony and other evidence about the practice at several Parsons projects prior to February 2012, and on most of those projects, employees either took afternoon breaks or left early.

authorized the Association to act on its behalf "for all matters contained in or pertaining to" the CBA. Because the CBA was silent with respect to Parsons's employee-break policy and this dispute was unique to Parsons, we are not persuaded that Parsons delegated authority to the Association to negotiate employee-break policy on its behalf and was thus prohibited from bargaining directly on this matter. See NLRB v. Miller Brewing Co., 408 F.2d 12, 15 (9th Cir. 1969) ("While multi-employer bargaining units are conducive to industrial peace and are favored by national policy, this preference is not incompatible with union negotiations with an individual member of an association on matters unique to that member." (citation omitted)); Statler Hilton Hotel, 191 N.L.R.B. 283, 285 (1971) ("Under settled law, . . . individual bargaining, limited as it is to a matter of particular concern to [one] employer, is not precluded by the existence of a multiemployer unit since it is neither inconsistent with, nor destructive of, the principle of group bargaining."), enforced mem., No. 72-1067, 1972 WL 3080 (D.C. Cir. Dec. 7, 1972). Moreover, as noted by the Board, the undisputed evidence established that Parsons negotiated directly with the Union on an employee-reimbursement issue in 2013. In any event, Parsons's agreement with the Association did not authorize it to unilaterally change the terms and conditions of employment. Instead, under that agreement, Parsons was required to act through the Association to negotiate with the Union over proposed changes in working conditions.

In sum, substantial evidence supports the Board's finding that Parsons violated the Act by unilaterally modifying its employee-break policy without notifying the Union or affording it an opportunity to bargain. The Board also reasonably rejected Parsons's contentions that the 2012 Break Policy merely clarified the 2005 Break Policy and existing practice. Finally, we reject Parsons's assertion that it was authorized to unilaterally change its employee-break policy because it lacked authority to bargain directly with the Union. The petition for review is denied and the Board's order is enforced.

_____