# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2317
_____

Exide Technologies

*Plaintiff - Appellant*

v.

International Brotherhood of Electrical Workers, Local No. 700

*Defendants - Appellee*
_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith
_____

Submitted: January 16, 2020
Filed: July 10, 2020
_____

Before KELLY, MELLOY, and KOBES, Circuit Judges.
_____

KELLY, Circuit Judge.

This appeal stems from a Collective-Bargaining-Agreement (CBA) dispute between Exide Technologies (Exide) and the International Brotherhood of Electrical Workers, Local Union No. 700 (the Union). An arbitrator resolved the dispute in favor of the Union, deciding that Exide had violated the CBA and the National Labor

Relations Act (NLRA) by unilaterally changing its procedures for implementing the Family and Medical Leave Act (FMLA) without bargaining with the Union.

Exide filed a complaint in the district court seeking to vacate both the arbitrator's finding of a CBA violation and his finding of an NLRA violation. The Union filed a counterclaim seeking to confirm the arbitrator's award. After a hearing, the district court[1] confirmed the arbitrator's CBA finding but concluded that it lacked jurisdiction to review the arbitrator's NLRA finding. We affirm.

## I. Background

Exide is a battery recycler and manufacturer headquartered in Milton, Georgia. It has ten facilities in seven states, including a plant in Fort Smith, Arkansas, where it manufactures industrial-purpose batteries. The Union is the exclusive bargaining agent for production and maintenance employees at the Fort Smith plant. Exide and the Union are parties to a CBA, which includes an arbitration clause. One of the items addressed in the CBA is FMLA leave administration.

On August 22, 2016, Exide notified employees that it would no longer process FLMA leave requests through its onsite human-resources departments. Instead, the requests would be processed through an offsite third-party administrator, Unum, effective September 1, 2016. The Union filed a grievance on August 31, 2016, arguing that Exide could not make this change without going through the collective-bargaining process because it was "a major change in terms and conditions of employment." Exide denied the grievance, asserting that it had the right to "change insurance plan administrators and administration without negotiation."

---

[1]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

The Union then filed two unfair-labor-practice charges with the National Labor Relations Board (NLRB). The NLRB consolidated the cases and conditionally dismissed the charges pursuant to its deferral policy "as set forth in Collyer Insulated Wire, 192 NLRB 837 (1971), and United Technologies Corp., 268 NLRB 557 (1984)." Under that policy, the NLRB will conditionally dismiss a case "when a set of facts may present not only an alleged violation of the [NLRA] but also an alleged breach of the collective-bargaining agreement subject to arbitration." Collyer, 192 N.L.R.B. at 841. However, the NLRB retains limited jurisdiction to decide, among other things, whether an arbitrator has reached a result "repugnant to the [NLRA]." Id. at 843.

After the NLRB deferred, the parties proceeded to arbitration. Their arguments centered on two provisions of the CBA. Exide relied on Article II of the CBA, "Management Rights," which reserves Exide's "inherent right . . . to conduct its business in all particulars except as expressly modified by [the CBA] and any written supplements to the [CBA]." Article II continues:

> The Company shall remain vested with all management functions including the full and exclusive control, direction and supervision of operations and the working forces . . . . Management functions, which shall be vested solely in the Company, shall include, but not be limited to, the right . . . to contract out, subcontract work or exchange work . . . [and] to determine . . . the processes, methods and procedures to be used . . . .

Exide asserted that this provision vested it with authority to unilaterally change FMLA leave administrators without bargaining. And it argued that, to the extent the CBA was ambiguous, its past practice of using third-party administrators for its short- and long-term disability policies showed that using a third-party administrator for its FMLA policy did not violate the CBA. In the alternative, Exide contended that, even if changing FMLA leave administrators violated the CBA, it did not violate the

NLRA because the change was "trivial."  See Parsons Elec., LLC v. NLRB, 812 F.3d 716, 720 (8th Cir. 2016) (explaining that "a unilateral change must be material, substantial, and significant before it is found to violate the [NLRA]" (cleaned up)).

For its part, the Union relied on Article XVII of the CBA, "Leaves of Absences," paragraph 154 of which states: "FAMILY MEDICAL LEAVE ACT. The Exide Technologies FMLA Policy is hereby incorporated, in its entirety as part of this Agreement."  Attached to the CBA is a company-wide document titled "Exide Technologies Human Resources Policies and Procedures."  That document details Exide's FMLA leave policies and procedures, and it states that FMLA leave requests are to be submitted to "the Human Resources Manager or their designated representative at the employee's location."

The Union argued that by requiring employees to submit FMLA leave requests to an offsite third-party administrator rather than the human-resources department at the employee's location, Exide's new policy violated the policies-and-procedures document, which had been expressly incorporated into the CBA.  Further, the Union argued that this was a material, substantial, and significant change in the terms and conditions of employment because it was more difficult for employees to submit leave requests to the third-party administrator than to their onsite human-resources departments, and the administrators would now be "nameless individuals, voices over the phone" who had no knowledge of the employees' rights under the CBA.

The arbitrator sided with the Union.  He found that the parties had expressly modified the CBA by incorporating Exide's FMLA policies-and-procedures document, and that Exide's new FMLA leave procedures violated the terms of that document.  He further concluded that this was a material, substantial, and significant change in the employees' terms and conditions of employment, in violation of § 8 of the NLRA.

The district court confirmed the arbitrator's CBA ruling because it drew its essence from the parties' agreement. However, the court decided that it lacked jurisdiction to review the arbitrator's NLRA ruling, explaining that "[i]f a party is dissatisfied with an arbitrator's decision and remedy on the § 8 claim, that party does not appeal to a United States District Court but moves the NLRB to reopen the deferred unfair labor practice charges so that the NLRB can consider the arbitrator's findings and remedy." Exide appeals. Our review is de novo. See Homestead Mining Co. v. United Steelworkers, Local 7044, 153 F.3d 678, 680 (8th Cir. 1998).

## II. The CBA Violation

The Labor Management Relations Act (LMRA) establishes a federal policy that arbitration is "the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). Section 301 of the LMRA gives federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Id. § 185(a). However, because "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards," United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960), and the parties to an agreement with an arbitration clause have bargained for the arbitrator's judgment, United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 568 (1960), "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator," id. at 567–68.

Specifically, the Supreme Court has instructed that:

[T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of

-5-

industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

Under this standard, we will vacate an arbitrator's award where "relevant language was not considered by the arbitrator" or it appears that "the arbitrator has not interpreted the specific contract at issue." George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, 879 F.2d 347, 351 (8th Cir. 1989). We will also vacate an award where the arbitrator's CBA interpretation "so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it." Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), 309 F.3d 1075, 1081 (8th Cir. 2002). And we have explained that, "where the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent," such as their past practices. Id. at 1082. Otherwise, the arbitrator cannot be said to have considered "the entire agreement." Id. (cleaned up).

Here, the parties authorized the arbitrator to decide whether Exide violated the CBA by unilaterally changing FMLA leave administrators. See PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local No. 11-770, 763 F.3d 1005, 1010 (8th Cir. 2014) ("When two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide that issue." (cleaned up)). However, the parties stipulated that the arbitrator's decision "shall be based solely upon an interpretation of the provisions of [the CBA]. The arbitrator shall not have the right to amend, take away, modify, add to, or change any of the provisions of [the CBA]." Exide argues that three aspects of the arbitrator's decision exceeded his authority under this provision.

First, Exide argues that the arbitrator failed to consider relevant language because he did not discuss the CBA's management-rights provision. We disagree. At the beginning of his opinion, the arbitrator set forth Exide's argument that it had authority to change FMLA leave administrators under the management-rights provision, as well as the Union's response to that argument. In his findings and conclusions, the arbitrator distinguished FMLA leave administration from other management functions on the basis that "[a]dministrative processing and evaluating employees' requests for statutory leave under the FMLA is not core entrepreneurial activity as it does not change the scope, direction or nature of the enterprise." And later in the opinion, the arbitrator stated: "As for Article II, Management Rights, it does not specifically reference or identify leave administration as reserved solely to management." The arbitrator thus considered the CBA's management-rights section. We have "no business" second-guessing his interpretation of it. See Am. Mfg. Co., 363 U.S. at 568.

Next, Exide argues that the arbitrator effectively rewrote the CBA by deciding paragraph 154 of the CBA incorporated Exide's entire "Human Resources Policies and Procedures" document. Exide notes that paragraph 154 states: "The Exide Technologies *FMLA Policy* is hereby incorporated, in its entirety as part of [the CBA]." Exide contends that only pages one through five of the policies-and-procedures document, which describe Exide's FMLA policy, were incorporated into the CBA. In its view, pages five and six, which describe Exide's FMLA procedures, were not incorporated. Whatever the merits of this argument, the arbitrator interpreted the CBA's language and decided that the incorporated "FMLA Policy" was the entire policies-and-procedures document attached to the CBA. "Because the arbitrator had the authority to adopt one reasonable interpretation of the CBA over the other, his interpretation must not be disturbed." PSC Custom, 763 F.3d at 1010.

Finally, Exide argues that the arbitrator failed to consider its past practice of using third-party administrators for its short- and long-term disability leave policies.

However, the arbitrator did consider this practice. He decided that, because Exide's FMLA leave procedures had been incorporated into the CBA but its short- and long-term disability leave procedures had not, "the conditions in the instant grievance are different from the conditions for the practice asserted by [Exide]."

After careful review, we conclude that the arbitrator "interpreted the specific contract at issue," Hormel, 879 F.2d at 351, and did not "effectively rewrite[] it," Boise Cascade, 309 F.3d 1075 at 1081. Because the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority," there is no basis for vacating the arbitrator's finding that Exide violated the CBA. See Misco, 484 U.S. at 38.

## III. The NLRA Violation

Next, Exide asks us to vacate the arbitrator's decision that unilaterally changing FMLA leave administrators was a material, substantial, and significant change in the employees' terms and conditions of employment in violation of § 8 of the NLRA. Like the district court, we must first assess whether we have jurisdiction over this issue.

Section 8 of the NLRA makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed [by the FMLA]," or to "refuse to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(1), (a)(5). An employer violates these provisions when it unilaterally makes a material, substantial, and significant change to the employees' terms and conditions of employment. See Parsons, 812 F.3d at 719–20. Courts have "no original jurisdiction" to decide unfair-labor-practice claims arising under § 8 of the NLRA. See Brown v. Sterling Aluminum Prods. Corp., 365 F.2d 651, 656 (8th Cir. 1966). Instead, Congress has empowered the NLRB to resolve unfair-labor-practice claims in the first instance. See 29 U.S.C. § 160(a).

The Supreme Court has decided that this delegation of authority ordinarily preempts federal courts from deciding cases that involve unfair-labor-practice disputes. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."). However, it has also recognized discrete exceptions to Garmon's preemption rule, grounded in "the nature of the particular interests being asserted" and the effect that preemption would have on "the administration of national labor policies." See Vaca v. Sipes, 386 U.S. 171, 180 (1967). As relevant here, the Court has held that § 301 of LMRA "permits suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board." Id. at 180–81 (citing Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962)).

Courts applying this doctrine have sometimes stated that "where a party's conduct gives rise to both a charge of an unfair labor practice and a claimed breach of a collective bargaining agreement, the NLRB and the district court share 'concurrent jurisdiction.'" Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1356 (8th Cir. 1995) (quoting William E. Arnold Co. v. Carpenters Dist. Council, 417 U.S. 12, 18 (1974)). The parties read these references to "concurrent jurisdiction" as indicating that, although federal courts do not usually have jurisdiction to decide unfair-labor-practice claims in the first instance, a different rule applies when a case involves both a CBA claim and an unfair-labor-practice claim. In this context, they contend, § 301 of the LMRA provides federal courts with original jurisdiction to decide both the CBA issue and the unfair-labor-practice claim.

We disagree. The cases cited by the parties indicate that, when a court possesses jurisdiction to decide a CBA issue under § 301 of the LMRA, it is not preempted from exercising its jurisdiction by the fact that the employer's conduct may also violate the

NLRA.  See Smith, 371 U.S. at 197.  These cases do not expand the court's original jurisdiction.

Section 301 of the LMRA does not provide us with original jurisdiction to decide whether Exide violated the NLRA.  See Brown, 365 F.2d at 656 ("The National Labor Relations Board has sole and exclusive original jurisdiction to determine whether the Company's actions violated their duties under the [NLRA], and the Courts have no original jurisdiction to make such a determination.").  Instead, it authorizes us to resolve "[s]uits for *violation of contracts* between an employer and a labor organization."  29 U.S.C. § 185(a) (emphasis added).  We have addressed the violation-of-contract issue in the preceding section.  As Exide acknowledges, the separate issue of whether this CBA violation also contravened the NLRA "is *not* an issue of contract interpretation, but instead one of applying the law as interpreted by the NLRB and federal courts."  That issue is assigned to the NLRB in the first instance.  See 29 U.S.C. § 160(a); see also Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 403 U.S. 274, 301 (1971) (noting that our jurisdiction in this context is generally limited to "disputes that are governed by the terms of the collective-bargaining agreement itself").

This does not mean that Exide is unable to seek review of the arbitrator's NLRA decision.  As the district court explained, Exide may seek to reopen the § 8 charge filed with the NLRB, which has retained jurisdiction to determine whether the arbitrator "reached a result . . . repugnant to the [NLRA]."  See Collyer, 192 N.L.R.B. at 843.  If the parties remain unsatisfied after the NLRB issues a decision, they may then petition for review in federal court.  See 29 U.S.C. § 160(f).

## IV.  Conclusion

The district court's judgment is affirmed.

_____