**UNITED STEELWORKERS OF AMERICA AFL–CIO, United Steelworkers of America, AFL–CIO, Local Union, No. 1305, Plaintiffs,**

v.

**BLAW–KNOX FOUNDRY & MILL MACHINERY INCORPORATED, Defendant.**

**Civ. A. No. 70–1206.**

United States District Court,
W. D. Pennsylvania.
Nov. 18, 1970.

Lucchino, Gaitens & Hough, Pittsburgh, Pa., for plaintiffs.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, District Judge:

In this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, plaintiffs, the United Steelworkers of America and Local No. 1305 thereof, seek an injunction restraining defendant, Blaw-Knox Foundry & Mill Machinery Incorporated, from reducing the number of employees manning the open hearth furnaces at defendant's Union Steel Works pending arbitration of the right of defendant to ef-

fectuate this reduction of manpower under the terms of a collective bargaining agreement in effect between the parties. The Court conducted evidentiary hearings on the 21st and 26th of October 1970. Upon review of the applicable agreements between the parties, the evidence adduced at the hearing, and the proposed findings of fact and conclusions of law submitted by the parties, the Court concludes that a preliminary injunction should issue pending arbitration.

Plaintiffs are unincorporated labor organizations. United Steelworkers of America is the bargaining agent for the employees of defendant employed at defendant's Union Steel Works, Allegheny County, Pennsylvania. Local Union No. 1305 is a duly chartered local union of United Steelworkers of America and also represents employees employed by defendant at its Union Steel Works.

Defendant Blaw-Knox Foundry & Mill Machinery Incorporated is a corporation which does business in Allegheny County, Pennsylvania, and is engaged in the manufacture and fabrication of steel and allied products. The company has a place of business known as the Union Steel Works located at 62nd and Butler Streets, Pittsburgh, Pennsylvania, and it employs persons who are members of and represented by plaintiff-unions herein. Defendant is engaged in an industry affecting commerce as defined in the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 141 et seq.

There is currently in effect between plaintiffs and defendant a Collective Bargaining Agreement executed on October 7, 1968 and effective until October 6, 1971. Section 6 of the Collective Bar-

gaining Agreement is a broad settlement of grievances provision [1] in which the parties have agreed to submit to the grievance procedure and ultimately to arbitration, if the matter is not resolved at a stage in the grievance procedure, all differences "as to the meaning and application of or compliance with the provisions" of the Collective Bargaining Agreement and "any grievance or dispute" between the parties.

Two other provisions of the Collective Bargaining Agreement are pertinent here. Section 2 provides for the continued effectiveness of previously executed local agreements. Section 2 reads in pertinent part:

"Local Working Conditions

Except as they conflict with the terms of this Agreement, all understandings with the Union or practices established by negotiations with local union officers and all practices or customs relating to wages, hours or working conditions, which are presently in effect, shall continue in effect for the life of this Agreement, unless the Company and the Union agree as to the discontinuance or modification of such local understanding, practice or custom. All local agreements shall be in writing."

Section 13 is directed to questions of safety and health. It provides in part, "the Company shall continue to make reasonable provision, including adequate medical and first aid services for the safety and health of its employees at the plant during the hours of their employment." Section 13 also renders grievances concerning safety and health subject to arbitration, and provides that grievances concerning safety and health

1. SECTION 6. ADJUSTMENT OF GRIEVANCES

Purpose

The purpose of this Section is to establish procedures for discussion, processing and settlement of grievances or any matter in dispute between the parties which arises during the term of this Agreement. Should differences arise between the Company and the Union, or its

members employed by the Company, as to the meaning and application of or compliance with the provisions of this Agreement, or should any grievance or dispute arise between the parties hereto, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences in accordance with the following procedure.

are to be brought at Step 2 of the grievance procedure.

On March 2, 1964, plaintiffs and defendant entered into a Local Agreement, Exhibit B to the Complaint, providing for the manning of open hearth furnaces with a crew of twenty-two employees on a twenty-four hour basis. The Local Agreement also specified, "upon review, the agreement may be terminated, for cause by either side giving ninety (90) days written notice." In March of 1970, defendant commenced discussions with plaintiffs as to whether or not the Local Agreement should be modified so as to permit a reduction of the number of employees manning the open hearth furnaces. Under the Local Agreement, defendant employed seven men on each of three turns, with an extra man callable for work upon any of the three turns. On August 26, 1970, plaintiffs and defendant agreed to conduct a one-week trial period in which six employees would be employed on each of the first two turns and five employees would be employed on the third turn. Another one-week trial period ensued on September 2, 1970, wherein defendant employed seven men on each of the first two turns and four men on the third turn. Plaintiffs concluded that the reduction in manpower was not feasible and indicated their opposition to defendant.

Defendant then indicated to plaintiffs that it was unilaterally terminating the Local Agreement of March 2, 1964 and intended to introduce a new manning schedule on September 21, 1970, whereby eighteen employees would man the open hearth furnaces within a twenty-four hour period, with seven men employed on each of the first two turns, four men employed on the third turn, and no extra man being provided. Counsel for the plaintiffs responded with a telegram dated September 18, 1970 requesting that the defendant delay the proposed change in the manning schedule until the parties would have an opportunity to utilize the grievance and arbitration procedures in order to determine whether the action of the defendant was permissible under the existing Collective Bargaining Agreement and the Local Agreement. The defendant refused to honor this request and effectuated the reduced manning schedule on September 21, 1970 as planned.

On September 22 and September 23, 1970, all of the fourteen employees designated to work the first and second shifts in the Open Hearth Department were absent from work. They stated variously as excuses for their absences illness, personal business, and auto trouble, etc. The four employees scheduled to work the third turn on the aforesaid days did report for work. Since September 23, 1970, there has been no further interruption of work of this nature.

On September 29, 1970, plaintiffs filed two related grievances with the defendant, defendant's Exhibits 1 and 2. In the first grievance, plaintiffs contend that defendant has violated the Local Agreement of March 2, 1964 by unilaterally reducing the open hearth crew from twenty-two employees to eighteen employees. In the second grievance, plaintiffs assert that the aforesaid reduction of employees has created an unsafe condition in the Open Hearth Department on charging turns. Both grievances have been processed through the third step of the grievance procedure provided in Section 6 of the Collective Bargaining Agreement. Remaining is the fourth step, which is arbitration. Plaintiffs have provided defendant with the names of four proposed arbitrators, and defendant has agreed to the selection of one of them for a determination of the grievances.

In this suit, plaintiffs request the Court to enjoin the defendant from effectuating the reduced manning schedule until a decision is rendered by the arbitrator as to whether the unilateral reduction would violate the Local Agreement between the parties and/or would create a safety hazard to the employees manning the open hearth furnaces. It is concluded that both issues clearly are arbitrable within the contemplation of the Collective Bargaining Agreement.

■ Whether the unilateral reduction would violate the Local Agreement turns upon the resolution of several issues. The Local Agreement, insofar as it specifies that "upon review, the agreement may be terminated, for cause by either side * * *," seems to contemplate the right of either party unilaterally to terminate said agreement. On the other hand, Section 2 of the Collective Bargaining Agreement, insofar as it provides for the continuance of local agreements with respect to working conditions "unless the Company and the Union agree as to the discontinuance or modification" thereof, appears to contemplate the termination of a Local Agreement only upon mutual consent of the parties. It must be determined whether the conflict between the aforequoted provisions of the Local Agreement and Collective Bargaining Agreement is real rather than merely apparent, and, if so, which provision should prevail. Also, if it be determined that the Local Agreement provides for unilateral termination and must prevail over the Collective Bargaining Agreement, further questions are presented as to what constitutes a termination "for cause" within the meaning of the Local Agreement and whether cause for termination exists in the circumstances of the case. All of these are matters involving "the meaning and application of or compliance with the provisions of" the Collective Bargaining Agreement. Hence, they are arbitrable under Section 6 thereof.

■ The safety grievance raises the question as to whether the action of the defendant in reducing the number of employees manning the open hearth furnaces is consistent with the obligation imposed upon defendant by Section 13 of the Collective Bargaining Agreement "to make reasonable provision * * * for the safety and health of its employees." This issue is rendered arbitrable by the terms of Section 13 itself.

The fundamental question presented here is whether the Court has the authority under § 301 of the Labor Management Act, *supra*, to enjoin an action of a party to the Collective Bargaining Agreement which disturbs the status quo, pending a determination by an arbitrator as to whether said action is or would be violative of the Collective Bargaining Agreement. The Court is of the opinion that, in appropriate circumstances, such relief may be granted.

■ It is the duty of the Courts to fashion from the policy of our national labor laws a federal substantive law to apply in suits under § 301 of the Labor Management Relations Act. Textile Workers Union v. Lincoln Mills, 353 U. S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The granting of injunctive relief restraining defendant-company's action pending a determination by the arbitrator of the right of defendant to pursue such action under the terms of the Collective Bargaining Agreement would not contravene the policy of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. Boys Markets, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, decided by the Supreme Court of the United States on June 1, 1970 (1970). As indicated in the *Boys Markets* case, *supra*, it was the intent of Congress in passing the Norris-LaGuardia Act to correct abuses which had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management. Here the injunction is sought against management and the peril against which Congress sought to protect, the use of the injunction as a weapon to weaken labor unions, is not present.

■ In appropriate circumstances, such as the Court finds here, the issuance of an injunction restraining the action of a party to a collective bargaining agreement pending a determination by the arbitrator of the right of a party to engage in such action under the collective bargaining agreement will foster the congressional policy to promote the peaceful settlement of labor disputes through arbitration. Plaintiffs contend

that the reduction in the number of employees manning the open hearth furnaces endangers the safety of the employees manning the furnaces. For any loss of work which may result from defendant's action, plaintiffs have an adequate remedy before the arbitrator, who may award back pay as well as require the continuance of a twenty-two man complement to operate the open hearth furnaces. However, to the extent that defendant's action in reducing the number of employees working at the open hearth furnaces threatens the health and safety of the employees working upon reduced crews, there is no adequate remedy either at law or in arbitration, pending a decision by the arbitrator of the safety grievances filed.

Plaintiffs have established to the satisfaction of the Court that they will suffer irreparable harm if an injunction is not granted pending arbitration of the grievances presented. At the hearing, plaintiffs called, as of cross-examination, defendant's Foundry Manager. He testified as to the possible occurrence of "runouts", in which molten steel contained in a furnace will seep through a hole in the refractory material in the floor of the furnace. When a runout occurs, it is the duty of employees assigned to the open hearth furnaces to direct the flow of the molten steel into a pit in the front of the open hearth furnace or, if that cannot be accomplished, to shovel sand into the hole in the floor of the furnace to plug it. It was conceded that such a runout could occur on the eleven to seven shift in which the crew has been reduced from seven to four men. When asked whether this raised a question with respect to safety, the Foundry Manager responded "There may be."

On the basis of the evidence adduced at the hearing, the Court concludes that there is a reasonable likelihood that plaintiffs will prevail on the merits of the grievances in arbitration. It is also found that plaintiffs will suffer irreparable harm if the Court does not issue an injunction restraining the company

from engaging in the proposed action until the arbitrator may adjudicate the issues presented to him. There is no substantial countervailing inconvenience or possible injury which will result to defendant by virtue of the issuance of the injunctive relief requested. Plaintiffs have posted a bond providing that the defendant will be reimbursed for wages and fringe benefits paid by defendant pursuant to the injunction, if the ultimate determination by the arbitrator indicates that the injunctive relief was improvidently granted.

■ Defendant contends that the terms of the bond tendered to the Court improperly delegate to the arbitrator the function of determining the liability to be incurred upon the obligation of the bond in the event that it is ultimately determined by the arbitrator that defendant rightfully reduced the number of employees manning the open hearth furnaces. It is claimed that the Court has erred in approving the bond as it is stated. The bond sets forth the condition of the obligation as follows:

"The maximum amount of the surety obligation is to be based on the award and conclusion of the Arbitrator, viz., if it is adjudicated that the four men worked in this proceeding or any part thereof have been improperly returned to their employment, the Company is to be reimbursed or paid for the wages and fringe benefits paid thereto, otherwise no obligation will exist under said bond. If, however, the Arbitrator finds specifically the Company is not entitled to any financial reimbursement, this obligation is to be null and void and of no legal effect or value."

It is the judgment of the Court that the aforequoted provision of the bond establishes sufficiently specific criteria for a determination of whether the preliminary injunction has been wrongfully entered to enable the arbitrator to determine, as a ministerial matter, whether the preliminary injunction has been wrongfully entered and, if so, the

**642**

amount thereof. The bond approved by the Court is sufficiently specific in stating the terms of the obligation so as to delegate virtually no discretion to the arbitrator in making a judgment as to whether the condition of the bond has been met and the amount to be awarded.

■ Defendant contends that actions in "bad faith" by the union should preclude its right to a preliminary injunction here under the "clean hands" doctrine. To establish bad faith on the part of the plaintiffs, defendant relies on the absences of the fourteen men assigned to the first and second shifts on September 22 and 23, 1970. Although none of these employees could be reprimanded for chronic absence, nevertheless, the coincidental absence of all fourteen men on the first and second shifts was indicative of a possible concerted activity of an improper nature. In a meeting with management shortly after these absences, the representatives of defendant suggested to the President of Local 1305 that he had a responsibility to direct the men to return to work. The President replied that the plaintiff-Unions had nothing to do with the men reporting off. There is no evidence that the plaintiffs either directed or encouraged the men on the first and second turns to absent themselves from work on these two days. It was the obligation of the President of Local 1305 to advise its members employed at the open hearth furnaces that, if their absences could not be explained by the excuses in fact given, the men were bound by the Collective Bargaining Agreement not to engage in a concerted absence from work. Nevertheless, these absences lasted only for two days and, thereafter, plaintiffs pursued only what can be deemed as proper remedies under the Collective Bargaining Agreement. Accordingly, the Court does not find here such evidence of bad faith as would preclude the plaintiffs from the relief requested here under the "clean hands" doctrine.

This opinion shall constitute the Court's findings of fact and conclusions of law consistent with the provisions of Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate order has been entered on the 27th day of October 1970.