**LOCAL UNION NO. 884, UNITED RUBBER, CORK, LINOLEUM, AND PLASTIC WORKERS OF AMERICA, Appellee–Cross–Appellant,**

**v.**

**BRIDGESTONE/FIRESTONE, INC., Appellant–Cross–Appellee.**

**Nos. 94–3820 and 94–4016.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1995.

Decided June 28, 1995.

Vacated and Superseded, 61 F.3d 1347.

G. Roger King, Columbus, OH, argued (Timothy B. Dyk and Daniel H. Bromberg, Washington, DC, and Tim Boe and Mark Peoples, Little Rock, AR, on brief), for appellant/cross-appellee.

Carolyn T. Wonders, Akron, OH, argued (Jim Carfagno, Jr., Russellville, AR, on brief), for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Bridgestone/Firestone ("BF") appeals the district court's order granting Local Union No. 884 ("Local 884") an injunction pending arbitration which prevents BF from implementing new contractual health care benefit terms to replace those in an expired master collective bargaining agreement. BF sought to implement the new health care terms together with other new terms after collective bargaining between it and Local 884's International Union failed to produce a new master contract. Local 884 cross-appeals the district court's decision not to enjoin BF from implementing other new contractual terms pending arbitration. We reverse in part and affirm in part.

## I.

BF usually enters into two types of collective bargaining agreements with its workers: (1) "Master Agreements" with the International Union of United Rubber, Cork, Linoleum, and Plastic Workers of America (the International); and (2) "Supplementary Agreements" with local unions (here Local 884). In 1991, BF and the International negotiated a three-year Master Agreement, and BF and Local 884 negotiated a Supplementary Agreement. Both agreements were scheduled to expire by their terms on April 24, 1994.

In April 1993, BF and Local 884 entered into a five-year Memorandum of Agreement, whereby BF agreed to consolidate many of BF's operations from other locations at the plant in Russellville, Arkansas. The April 1993 Memorandum of Agreement (also referred to as a consolidation agreement) was the product of very difficult and drawn out negotiations.

The 1993 Memorandum of Agreement contains a number of provisions which set the context of this case. Under the 1993 Memorandum of Agreement, BF agreed to provide job security, i.e., no reductions in wages or hours, for four years in exchange for Local 884's promise not to engage in any strike, slow down, or other interruption of work for the four-year period. Although health care issues and other benefits issues were discussed during the negotiations, the parties eventually agreed in section (g) of the 1993 Memorandum of Agreement to leave unresolved matters to the next round of national negotiation, stating:

> Upon the expiration date of the 1991 Master and the 1991 Russellville Supplementary Agreements, the terms and conditions of said Agreements will continue in full force and effect until new terms are implemented as a result of 1994 Master and Supplementary negotiations.

(BF's Adden. at 8A.)

In March 1994, BF and the International began to negotiate a new Master Agreement. On April 24, 1994, the 1991 Master Agreement and the 1991 Supplementary Agreement expired. The parties have been unable to reach terms on a new Master Agreement to this date. In July 1994, the International went on strike at all BF plants in the United States except the plant in Russellville, where, as noted above, Local 884 had entered into a no-strike agreement with BF. In late summer 1994, BF declared a bargaining impasse with the International and implemented the terms of what it called its "best and final offer" at all plants except Russellville. The International then filed an unfair labor practices complaint with the National Labor Relations Board (NLRB), charging that there was no impasse and that BF had not bargained in good faith.

In October 1994, BF informed Local 884 that on November 1, 1994, BF intended to

implement at the Russellville plant those provisions of its "best and final offer" that were not inconsistent with the 1993 Memorandum of Agreement. On October 26, 1994, Local 884 filed a grievance with BF charging that BF had violated section (g) of the 1993 Memorandum of Agreement by attempting to implement these new terms in the absence of new Master and Supplementary Agreements. On October 31, 1994, Local 884 filed an unfair labor practices complaint with the NLRB charging that BF "unilaterally changed the terms and conditions of employment by implementing certain provisions of its last best offer in violation of the plant's local Memorandum of Agreement." (BF's Adden. at 17A.) BF responded by arguing that the 1993 Memorandum of Agreement, and in particular section (g), allows for implementation of its final offer after the parties have reached an impasse in bargaining.

Also on October 31, 1994, Local 884 filed this lawsuit. Local 884 argued that under section (g) of the 1993 Memorandum of Agreement, the terms of the 1991 Master Agreement and 1991 Supplementary Agreement remain in full force. Local 884 also argued that BF implemented the terms of its final offer to pressure Local 884 in the ongoing Master Agreement negotiations. Local 884 complained about a number of items that BF implemented. The dispute here centers around six of those implemented items: health benefits, vacation usage, absenteeism, deadlines for grievances and arbitration, union activities, and pension reductions. Local 884 sought a temporary restraining order (TRO), a preliminary injunction, a permanent injunction, compensatory damages, and a declaration that BF must perform its obligation to arbitrate the dispute about the effect of section (g) of the 1993 Memorandum of Agreement.

The district court issued an order on the TRO request, finding that the dispute under section (g) of the 1993 Memorandum of Agreement was arbitrable and that the district court had the jurisdiction and authority to enter an injunction. The district court then entered a TRO, which temporarily prohibited BF from implementing those provisions of the new health insurance program

that either required higher payments by the employees or that reduced coverage areas for the employees.

After an evidentiary hearing, the district court granted a preliminary injunction on basically the same grounds and same rationale set forth in the TRO. (BF's Adden. at 1A–5A.) The district court stated that the NLRB would issue the definitive ruling on whether under section (g) of the 1993 Memorandum of Agreement, the 1991 Master and Supplementary Agreements still control benefits issues. The district court declined to issue a preliminary injunction to prohibit BF from implementing the other items that Local 884 complained about (vacation, absenteeism, arbitration procedures, union activities, etc.). The district court specifically found that Local 884 had not shown that irreparable harm would result if the court did not issue a preliminary injunction as to those items.

Local 884 filed a motion to clarify the preliminary injunction order, asking the court to specify that the injunctive relief issued by the court should remain in effect until the dispute is settled by private arbitration. The district court entered a clarification order, stating that "the court envisioned that should the NLRB mandate private arbitration of its own, or decide to wait until private arbitration is completed before making its [NLRB's] final determination, the court's injunction would remain in effect until that time." (Local's Adden. at 3A.)

BF appeals the decision to grant the preliminary injunction against it. Local 884 cross-appeals from the court's declination to issue a broader preliminary injunction. We set this case for expedited briefing and argument.

## II.

The party moving for a preliminary injunction bears the burden of proving that it should issue. *Modern Computer Sys. v. Modern Banking Sys.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc). We will not reverse a district court's grant or denial of a preliminary injunction unless the decision consti-

tutes an abuse of discretion or relies on an erroneous legal premise. *Id.*

BF raises a number of issues in its appeal. BF first contends that the district court violated the Norris–LaGuardia Act, 29 U.S.C. §§ 101–115, by issuing an injunction pending arbitration. BF also contends that even if the preliminary injunction does not violate the Norris–LaGuardia Act, the district court nonetheless erred in finding that Local 884 had satisfied the requirements for a preliminary injunction; in particular, BF argues that Local 884 failed to establish the probability of success on the merits of the dispute or that it would suffer irreparable harm without the preliminary injunction. BF also argues that because the dispute between the parties is before the NLRB, the National Labor Relations Act preempts the district court's jurisdiction over this dispute.

### A. *Norris–LaGuardia Act and Injunction Pending Arbitration*

■ The Norris–LaGuardia Act generally prohibits federal courts from issuing injunctive relief in labor disputes. The relevant portions of the Act specifically provide:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute ... from doing, whether singly or in concert, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment;
>
> . . . .
>
> (c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value. . . .

29 U.S.C. § 104(a), (c). The district court imposed the preliminary injunction in this case under the exception to the Act provided for in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Pursuant to *Boys Markets,* an injunction to prevent a strike can be issued in spite of the Norris–LaGuardia Act's prohibition against enjoining labor strikes, 29 U.S.C. § 104(a), "if the strike is over a dispute which under the parties' collective bargaining agreement should be submitted to arbitration." *John Morrell & Co. v. Local Union 304A*, 804 F.2d 457, 459 (8th Cir.1986) (interpreting *Boys Markets*), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). The Supreme Court noted in *Boys Markets* that while the anti-injunction provision of the Norris–LaGuardia Act reflected a national policy of nonintervention by the federal courts in labor disputes, that policy needed to be reconciled with another well-defined national policy—encouraging arbitration to peacefully resolve labor disputes. 398 U.S. at 251–253, 90 S.Ct. at 1592–94. The Supreme Court determined that the nonintervention policy of the Norris–LaGuardia Act should yield, and an injunction should enter, when the parties have agreed to submit the disputed issue to mandatory arbitration. *Id.* at 252–53, 90 S.Ct. at 1593–94.

■ To our knowledge, neither the Supreme Court nor our court has ever applied the *Boys Markets* exception to enjoin an *employer* from taking actions in a labor dispute that a union asserts is subject to mandatory arbitration. Thus, we must determine whether the *Boys Markets* exception applies to this case where the union has sought and obtained an injunction against the company. While this is an issue of first impression in this circuit, other circuits addressing the question have unanimously concluded that the *Boys Markets* rationale should be extended to allow for injunctions against employers. *See, e.g., Niagara Hooker Emp. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1377 (2d Cir.1991); *Local Union 733 of Int'l Bhd. of Elec. Workers*, 906 F.2d 149, 152 (5th Cir.1990); *Oil, Chem. & Atomic Workers Int'l v. Amoco Oil, Co.*, 885 F.2d 697, 702 (10th Cir.1989). We agree with the other circuits.

■ The question then becomes whether Local 884 has satisfied the test for a *Boys Markets*-type injunction to prohibit BF, in spite of the Norris–LaGuardia Act (and in particular 29 U.S.C. § 104(c)), from imple-

menting new changes in health care benefits. The *Boys Markets* exception to the Norris–LaGuardia anti-injunction provision is narrow. *Morrell,* 804 F.2d at 459. In determining whether an injunction · should issue against the employer, the focus is on preserving the arbitration process. *Niagara Hooker,* 935 F.2d at 1377. Thus, in order for the exception to be applicable, "[t]he underlying dispute must be subject to mandatory arbitration under the labor contract and the injunction must be necessary to 'prevent arbitration from being rendered a meaningless ritual.'" *Id.* (quoting *Local Lodge No. 1266 v. Panoramic Corp.,* 668 F.2d 276, 283 (7th Cir.1981)); *see also Boys Markets,* 398 U.S. at 253–54, 90 S.Ct. at 1593–94 (underlying dispute must be subject to mandatory arbitration); *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 407, 96 S.Ct. 3141, 3147–48, 49 L.Ed.2d 1022 (1976) (courts should enjoin only conduct that "would interfere with and frustrate the arbitral process"). If those elements are established, then the union must also satisfy the equitable test for a preliminary injunction. *See Niagara Hooker,* 935 F.2d at 1377. In our circuit, the equitable test is laid out in *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109 (8th Cir.1981) (en banc). BF argues that Local 884 has failed to satisfy any of the above requirements for an injunction in this case.

### 1. *Subject to Arbitration*

■ BF argues that the dispute about the meaning of section (g) of the 1993 Memorandum of Agreement is not subject to arbitration. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ Where the collective bargaining agreement contains an arbitration clause, there is a presumption in favor of arbitrability. *International Bhd. of Elec. Workers,*

*Local No. 4 v. KTVI–TV, Inc.,* 985 F.2d 415, 416 (8th Cir.1993) (citing *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419). "Under the presumption, arbitration ' "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " *Id.* (quoting *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353)).

■ While there is no arbitration clause in the 1993 Memorandum of Agreement, there is an arbitration provision in the grievance procedure of the now expired 1991 Master Agreement. A grievance that arises after a contract expires is subject to the expired contract's arbitration provision only in limited circumstances. One of those circumstances is "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 206, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177 (1991). The disputed right survives when "a collective bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration [and, therefore,] disputes as to such continuing benefits may be found to arise under the agreement, and so become subject to the contract's arbitration provisions." *Id.* at 207–08, 111 S.Ct. at 2226. That is precisely the situation in this case.

■ Section (g) of the 1993 Memorandum of Agreement provides that the terms and conditions of the 1991 Master Agreement, which include the grievance and arbitration procedures, remain in effect until new terms· are implemented as a result of the 1994 Master and Supplementary negotiations to replace them. BF does not argue that it implemented a new grievance procedure to replace the arbitration requirement in the grievance procedure of the 1991 Master Agreement. Thus, the grievance procedure and arbitration requirements of the 1991 Master Agreement remain in effect.

The 1991 Master Agreement's arbitration provision states that BF and the Union will arbitrate disputes "concerning the interpre-

tation or application of this Agreement or any local plant Supplementary Agreements." (Article XI, "Procedure for Adjustment of Grievances," Sec. 2(2), BF's Adden. at 13A.) BF argues that the 1993 Memorandum of Agreement is not a "Supplementary Agreement" and, therefore, is not subject to the arbitration clause of the 1991 Master Agreement. We disagree. As counsel for BF stated in oral argument, a "Supplementary Agreement" is not defined in any of the contracts between the parties nor does it carry special meaning as a term of art. Rather, BF's counsel stated that the phrase should be given a plain meaning reading. Under such a reading, we conclude that a Supplementary Agreement is simply a specific agreement for a particular BF plant which supplements the Master Agreement, providing for those features or circumstances which are unique to that particular plant. While it may or may not be true, as BF suggests, that normally there is only one "Supplementary Agreement" for each plant, it is abundantly clear to us that the 1993 Memorandum of Agreement is a second "Supplementary Agreement" at the Russellville plant, because it supplements the 1991 Master Agreement (as well as the 1991 Local Supplementary Agreement) by further defining and clarifying the relationship between BF and Local 884 at Russellville. Thus, we reject BF's argument that section (g) of the 1993 Memorandum of Agreement is not part of a Supplementary Agreement.

Because there is an applicable arbitration clause in the 1991 agreements between BF and Local 884, we give effect to the presumption in favor of arbitration. After reviewing the clause, it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *KTVI–TV, Inc.*, 985 F.2d at 416 (internal quotations omitted). Quite to the contrary, we believe it can be said with positive assurance that there is an agreement to arbitrate this dispute. It is undisputed that Local 884 bargained away its right to strike. It is very doubtful to us that Local 884 would have then also bargained away its other dispute resolution vehicle, i.e.,

arbitration. Thus, absent a clear indication to the contrary, we will presume that the fact that Local 884 has foregone its ability to strike is a further indication that the parties intended the arbitration clause in the 1991 Master Agreement to remain in effect at Russellville until a new arbitration clause or new grievance procedure is implemented.

BF also argues that the dispute is not arbitrable because, as we have previously held, contract termination issues should be decided by the courts, not the arbitrator, unless the parties have explicitly agreed otherwise. *International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. ITT Corp., Thermotech Div.*, 508 F.2d 1309, 1313 (8th Cir.1975). BF asserts that because Local 884 is arguing that section (g) of the 1993 Memorandum of Agreement requires parts of the 1991 Master Agreement to remain in effect, even after the Master Agreement's termination date, the question before the arbitrator necessarily would be whether the 1991 Master Agreement has expired. Thus, BF contends that the issue should not be subject to arbitration.

We disagree. Even if the arbitrator is required to decide indirectly if the 1991 Master Agreement has expired, the parties have agreed to arbitrate the issue of expiration. As we observed in *Thermotech,* a broadly worded arbitration clause in which the parties agree to arbitrate "the *interpretation and application*" of the terms of the collective bargaining agreements between them "indicates an intent to arbitrate disputes relating to a purported termination or expiration of the bargaining agreement." 508 F.2d at 1314. Here, the arbitration clause in the 1991 Master Agreement specifies that the Union will arbitrate disputes "concerning the *interpretation or application of this Agreement or any local plant Supplementary Agreements.*" (BF's Adden. at 13A (emphasis added).) Thus, we conclude that the arbitration clause indicates the intent of the parties to arbitrate the issues of termination of the 1991 Master Agreement or any other Supplementary Agreements, including the 1993 Memorandum of Agreement.[1]

---

1. In *Thermotech,* we concluded that the arbitra-

tion clause in the main collective bargaining

## 2. Frustration of Arbitration

■ BF next argues that Local 884 failed to establish that the preliminary injunction was necessary to avoid frustration of the arbitration process. "[T]he union may obtain a *status quo* injunction against an employer when the employer's action has the effect of frustrating the arbitral process, or rendering it a 'hollow formality.' " *Niagara Hooker,* 935 F.2d at 1377 (quoting *Lever Bros. v. Int'l Chem. Workers Union, Local 217,* 554 F.2d 115, 123 (4th Cir.1976)). Stated another way, the injunction must be necessary to "prevent arbitration from being rendered a meaningless ritual." *Niagara Hooker,* 935 F.2d at 1377 (quoting *Panoramic Corp.,* 668 F.2d at 283).

■ "The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction." *Id.* at 1378. The fact that the arbitration decision will not be able to restore perfectly the status quo ante is not enough; the injury must be irreparable and must "threaten the integrity of the arbitration process itself." *Id.*

■ We conclude that Local 884 has failed to demonstrate that a decision favorable to it in arbitration would not be able to remedy the harms about which Local 884 complains. If the arbitrator agrees with Local 884 that the health benefits under the 1991 Master Agreement remained in effect pursuant to section (g) of the 1993 Memorandum of Agreement, then the arbitrator can order BF to repay all monthly premium payments and deductibles that the employees were wrongly deprived of and require reinstatement of the levels of medical and dental coverages for which the 1991 Master Agreement provided.

■ Local 884 makes only a very slight attempt to argue irreparable harm. That argument is based on testimony by a union employee that it is *possible* that some hospitals might refuse coverage to BF hourly employees because many of those employees live paycheck to paycheck, and the hospitals might conclude that the employees are not able to cover their increased deductibles. We are not persuaded by that argument. The possible harm identified is wholly speculative and because it is, it cannot be called irreparable harm. Moreover, additional financial hardship in and of itself is not enough to establish the irreparable harm and frustration of arbitration that would justify a preliminary injunction. *See Niagara Hooker,* 935 F.2d at 1378 (citing cases to that extent).[2]

## 3. Equitable Relief Test

■ We also conclude that the district court erred in finding that Local 884 satisfied the *Dataphase* test for a preliminary injunction. Under that test, courts should consider:

(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties liti-

agreement did not apply to the dispute in that case, which arose under a subsequent letter agreement between the parties, because the collective bargaining agreement specifically indicated that the arbitration clause was limited to disputes arising only under the collective bargaining agreement itself. 508 F.2d at 1314. The result in this case is different because the arbitration clause in the Master Agreement extends to disputes under the Master Agreement and "any local plant Supplementary Agreements." The arbitration clause applies in this case because, as we have already concluded, the 1993 Memorandum of Agreement is a local plant Supplementary Agreement.

**2.** As we have held in other arbitration cases, *see Peabody Coalsales Co. v. Tampa Elec. Co.,* 36 F.3d 46 (8th Cir.1994), the labor arbitration cases also allow for a preliminary injunction in aid of arbitration where there is an express agreement in the collective bargaining agreement to maintain the status quo pending arbitration. *See Niagara Hooker,* 935 F.2d at 1378. There is generally no requirement, however, that an express agreement to maintain the status quo is necessary in these cases before a federal court can issue a *Boys Markets* type of injunction. *Niagara Hooker,* 935 F.2d at 1377; *Amoco Oil,* 885 F.2d at 702; *but see Amalgamated Transit Union, Div. 1384 v. Greyhound Lines, Inc.,* 550 F.2d 1237, 1238–39 (9th Cir.) (requiring express promise by employer to maintain the status quo), *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977). In this case there is no such express provision to maintain the status quo pending arbitration.

gant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase,* 640 F.2d at 114. As we found above, Local 884 has failed to show that without the injunction it would suffer irreparable harm in this case. *See Amoco Oil,* 885 F.2d at 704 (irreparable injury inquiry and frustration of arbitration inquiry coincide and most courts simply merge into a single inquiry). The absence of irreparable harm "is sufficient grounds for vacating a preliminary injunction." *Modern Computer Sys.,* 871 F.2d at 738.

For the reasons stated above, we conclude that the district court erred in entering the injunction because Local 884 failed to demonstrate that without the injunction the arbitration proceeding would be frustrated or rendered a nullity. The Norris–LaGuardia Act is clear that injunctions are not generally permitted in labor disputes and the *Boys Markets* exception should be applied narrowly. Accordingly, we reverse the district court's order entering a preliminary injunction preventing BF from instituting revised health care benefits pending the arbitration of BF's claimed right to do so.

## B. *Preemption under the NLRA*

■ BF also argues that under the National Labor Relations Act, 29 U.S.C. §§ 151–169, the jurisdiction of the NLRB preempts the jurisdiction of the district court to address the claims in this case. BF asserts that under the preemption doctrine of *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245–47, 79 S.Ct. 773, 779–81, 3 L.Ed.2d 775 (1959), federal courts must "defer to the exclusive competence of the National Labor Relations Board" whenever "an activity is arguably subject" to the Board's jurisdiction, *id.* at 245, 79 S.Ct. at 779–80. BF contends that Local 884's claim in this case is essentially a duplicate of the unfair labor practices claim before the NLRB, and thus the district court's jurisdiction is preempted under *Garmon.* We disagree.

The gravamen of Local 884's complaint to the NLRB is that BF engaged in an unfair labor practice, a violation of section 8 of the Labor Management Relations Act, by implementing new contractual terms before BF and Local 884 had reached a "bargaining impasse." The main question for the NLRB to decide is whether there was a "bargaining impasse" at the time BF implemented the new terms. The complaint before the NLRB also asserts that BF committed an unfair labor practice by implementing new terms in violation of section (g) of the 1993 Memorandum of Agreement.

In this court case, Local 884 is making its claim under section 301 of the Act (codified at 29 U.S.C. § 185), which gives the federal district court jurisdiction in disputes over violations of collective bargaining agreements. Local 884 argues that section (g) of the 1993 Memorandum of Agreement prevents BF from imposing new contractual terms to replace those in the expired 1991 Master Agreement prior to reaching a new collective bargaining agreement. Local 884 argues that section (g) requires the terms of the 1991 Master Agreement to remain in effect until the parties sign a new collective bargaining agreement.

We conclude that the district court's jurisdiction is not preempted under the *Garmon* doctrine because the dispute here involves a claimed violation of a collective bargaining agreement. We have previously observed, as a "well entrenched general rule" that:

the fact that a particular activity may constitute an unfair labor practice under section 8 of the Labor Management Relations Act, 29 U.S.C. § 158, does not necessarily preclude the district court's jurisdiction under section 301 of the Act if that activity also constitutes a breach of the collective bargaining agreement.

*Local Union 204 of the Int'l Bhd. of Elec. Workers v. Iowa Elec. Light and Power Co.,* 668 F.2d 413, 416 (8th Cir.1982) (citing *William E. Arnold Co. v. Carpenters Dist. Council,* 417 U.S. 12, 15–16, 94 S.Ct. 2069, 2071–72, 40 L.Ed.2d 620 (1974)) (other citations omitted). The *Garmon* preemption doctrine is simply " 'not relevant' " where there is a claim under section 301 asserting a breach of the collective bargaining agreement. *William E. Arnold Co.,* 417 U.S. at 16, 94 S.Ct. at 2072. Thus, in cases like this

where a party's conduct gives rise to both a charge of an unfair labor practice and a claimed breach of a collective bargaining agreement, the NLRB and the district court share "concurrent jurisdiction." *Id.* at 18, 94 S.Ct. at 2073.

BF acknowledges that the district court has jurisdiction over section 301 claims, but argues that Local 884's claim is not a section 301 claim and is really a subterfuge to allow Local 884 to get the issue of "bargaining impasse" before an arbitrator, instead of before the NLRB where it belongs. BF contends that we should treat Local 884's claim entirely as an unfair labor practices claim and apply *Garmon* preemption. BF misapprehends the reach of Local 884's argument. Local 884 has asked the district court to declare that the dispute over the meaning of section (g) is arbitrable and to grant an injunction to aid that arbitration. Under the arbitration clause, the issue of impasse is not subject to arbitration. The arbitration clause applies only to matters "concerning interpretation or application of" the Master and Supplementary Agreements, and the issue of whether there was a "bargaining impasse" at the time BF imposed the new terms is not, in our view, a matter "concerning interpretation or application of" the bargaining agreements. Accordingly, we reject BF's argument because Local 884's claim does not allow the "impasse" issue to be raised before the arbitrator.

BF next argues that as a matter of sound judicial policy we should direct this entire matter, the unfair labor practice charge and the contract interpretation dispute, to proceed solely before the NLRB where similar issues are already pending. BF reasons that allowing the claims to continue to proceed before two different decisionmaking bodies will waste resources and present the risk of conflicting decisions from the NLRB and the arbitrator. Local 884 argues that we should direct the district court explicitly to order this matter to proceed to arbitration.

 We are not persuaded that this entire matter should proceed before the NLRB. The pendency of similar issues before the

NLRB and the court (or arbitrator) does not require dismissal or stay of the section 301 contract action. *See Jason Mfg.*, 900 F.2d at 1400; *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir.1986); *see also Local 807, Int'l Bhd. of Teamsters v. Brink's Inc.*, 744 F.2d 283, 286 (2d Cir.1984) ("That the issues are before the NLRB does not preclude plaintiff from raising them concurrently in an arbitration proceeding"). Likewise, a *possibility* for conflicting decisions, which is all BF has argued, is not enough to stay arbitration. *See Sheet Metal Workers, Local 162 v. Jason Mfg.*, 900 F.2d 1392, 1400 (9th Cir.1990); *International Bhd. of Elec. Workers v. Brink Constr.*, 825 F.2d 207, 213 (9th Cir.1987); *see also Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 860 F.2d 1420, 1427 (7th Cir.1988) ("The NLRB will determine what weight, if any, to give to the eventual arbitral award; the court need not concern itself with the potential for 'interference' between the arbitration and the Board proceeding"). In this case we see little potential for conflicting decisions or for the unnecessary waste of resources. The only question before both the NLRB and the arbitrator is the interpretation of section (g). The NLRB generally refrains from exercising jurisdiction in cases where the disputed conduct is "arguably both an unfair labor practice and a contract violation when ... the parties have voluntarily established by contract a binding settlement procedure." *William E. Arnold Co.*, 417 U.S. at 16, 94 S.Ct. at 2072; *see also Sheet Metal Workers Local Union 20 v. Baylor Heating and Air Conditioning, Inc.*, 877 F.2d 547, 551 (7th Cir.1989) ("when the underlying controversy is primarily contractual, the Board should defer to the courts"); *Emery Air Freight*, 786 F.2d at 100 (in cases of overlapping jurisdiction NLRB will either defer to arbitrator's award or disregard it if it is inconsistent with the established law).[3] Here, the parties have agreed to arbitrate the meaning of section (g) and the NLRB likely will defer to the arbitration proceeding. Accordingly, we find no reason to stay or curtail in any way the arbitration proceeding.

---

3. Congress vested the primary jurisdiction for disputes arising under collective bargaining agreements in the courts. *Brink Constr.*, 825 F.2d at 213.

Likewise, we conclude that the district court's decision in no way prevents or hinders the dispute from proceeding to arbitration. As we read the record, the district court's latest ruling appeared to contemplate that this matter could proceed directly to arbitration concurrent with the NLRB proceeding. (*See* Local's Adden. at 3A.) (district court stating that it "envisioned that should the NLRB mandate private arbitration of its own, *or decide to wait until private arbitration is completed* before making its [NLRB's] final determination, the court's injunction would remain in effect until that time" (emphasis added)). Accordingly, we decline Local 884's request to further instruct the district court to specifically order arbitration as that is not necessary in this case.

### III.

■ Local 884 cross-appeals the district court's denial of its request for a preliminary injunction to prohibit BF from implementing new rules regarding vacation, absenteeism, arbitration procedures, union activities, and pensions. In particular, Local 884 argues that the district court erred in finding that Local 884 failed to establish the necessary "irreparable harm." After carefully reviewing the record, we conclude that the district court's conclusion that Local 884 would suffer no irreparable harm is fully supported by the record. The adverse consequences that Local 884 asserts would result from BF's implementation of the new terms could be remedied by a favorable decision in arbitration. Local 884's failure to establish irreparable harm is fatal to Local 884's request for a preliminary injunction. *Modern Computer Sys.*, 871 F.2d at 738 ("one moving for a preliminary injunction is required to show the threat of irreparable harm"). Thus, the district court committed no error in denying Local 884's request for a preliminary injunction to prohibit BF from implementing these new benefits rules.

### IV.

We conclude that Local 884 has failed to demonstrate that it would suffer irreparable harm if the district court failed to enjoin BF's imposition of new benefits provisions pending arbitration. Accordingly, on the direct appeal we reverse the district court's judgment granting a preliminary injunction pending arbitration which prohibited BF from imposing new terms for health care benefits and we dissolve that injunction. On the cross-appeal, we affirm the district court's judgment denying Local 884 a preliminary injunction pending arbitration to prohibit BF from imposing other new terms with respect to other topics.