UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL–CIO–CLC, Plaintiff,

v.

ESSENTIA HEALTH, Defendant.

Case No. 17–cv–4753 (WMW/LIB)

United States District Court,
D. Minnesota.

Signed November 15, 2017

Brendan D. Cummins, Justin D. Cummins, Cummins & Cummins, PLLP, Mpls, MN, for Plaintiff.

Grant T. Collins, Grant S. Gibeau, Paul J. Zech, Penelope J. Phillips, Felhaber Larson, Mpls, MN, for Defendant.

## MEMORANDUM OPINION

Wilhelmina M. Wright, United States District Judge

On October 24, 2017, Plaintiff moved for an expedited preliminary injunction, (Dkt. 4), which the Court denied on November 9, 2017, (Dkt. 29). The Court now provides the findings and legal conclusions in support of its decision.

## BACKGROUND

Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL–CIO–CLC (the USW) is a labor union. Defendant Essentia Health is an integrated health system with its headquarters in Duluth, MN. Many Essentia employees are members of the USW, and the USW, on behalf of Locals 9460 and 9349, and Essentia are parties to several collective bargaining agreements (CBAs), including the CBAs at issue here. The language of the CBAs that is relevant to this matter is identical. Under the CBAs, Essentia retains exclusive management rights over certain decisions, and any decision outside of Essentia's exclusive management rights is subject to bargaining with the USW. The CBAs also outline a grievance procedure, the final step of which is mandatory arbitration.

In August 2015, Essentia implemented the 2015 Healthcare Worker Influenza Vaccination policy (2015 Policy), under which Essentia required every employee to receive a flu vaccination, request a medical exemption, or complete a form declining the flu vaccination and attend an educational program on the flu. The 2015 Policy provided that refusal to participate in the program "may result in disciplinary action, up to and including, termination." The USW did not request to bargain over the 2015 Policy. In 2017, Essentia revised the 2015 Policy. Under the 2017 Healthcare Worker Influenza Vaccination policy (2017 Policy), absent a medical or religious exemption, every employee is required to receive a flu vaccination as a condition of employment. Any employee who fails to comply with the 2017 Policy "will be prohibited from working or providing services within Essentia Health and may be subject to disciplinary action, up to and including termination."

The parties dispute when Essentia notified the USW of the 2017 Policy. Essentia

asserts that it notified USW representatives of the 2017 Policy on or before July 20, 2017. But the USW alleges that it was not notified until early September. The USW and Essentia first met to discuss the 2017 Policy on September 28, 2017. The USW asserted that the CBAs require Essentia to submit the 2017 Policy to bargaining prior to implementation. Essentia maintained that the 2017 Policy falls within Essentia's exclusive management rights and advised the USW that implementation of the policy would not be delayed. The next day, the USW filed a formal grievance, following the procedure outlined in the CBAs. The USW claimed that Essentia had unilaterally implemented a policy that is subject to bargaining. Both parties agree that the underlying question—whether the 2017 Policy should be subject to bargaining under the CBAs—is subject to arbitration.

On October 20, 2017, the USW initiated this action seeking injunctive relief, and the USW filed its motion for an expedited preliminary injunction on October 24, 2017.

## ANALYSIS

As a threshold matter, Essentia argues that the Norris–LaGuardia Act bars this Court from issuing an injunction, and that the USW does not qualify for an exception to the Norris–LaGuardia Act. The USW counters that the implementation of the 2017 Policy prior to resolution of arbitration would irreparably harm the USW and undermine the arbitration process.

 The Norris–LaGuardia Act, 29 U.S.C. §§ 101 et seq., "generally prohibits federal courts from issuing injunctive relief in labor disputes." Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1351 (8th Cir. 1995). Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 185 et seq., creates a federal cause of action for the alleged breach of a collective bargaining agreement, "encourag[ing] arbitration and afford[ing] the party to a collective bargaining contract the benefit of its bargain." Niagara Hooker Emps. Union v. Occidental Chem. Corp., 935 F.2d 1370, 1375–76 (2d Cir. 1991). Noting a potential conflict between these two acts of Congress, the Supreme Court of the United States reconciled the statutes in Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 253–54, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In recognition of the importance of providing remedies to enforce arbitration agreements, id. at 247–48, 90 S.Ct. 1583, the Court created a judicial exception to the anti-injunction policy of the Norris–LaGuardia Act by permitting an employer to obtain an injunction against a strike if three conditions were met: "the collective bargaining contract contained a no-strike clause, the strike was over an arbitrable issue, and the injunction was warranted under 'ordinary principles of equity.'" Niagara Hooker, 935 F.2d at 1376 (quoting Boys Markets, 398 U.S. at 254, 90 S.Ct. 1583).

 The Eighth Circuit has determined that the Boys Markets exception also applies to injunctions against employers. Bridgestone, 61 F.3d at 1352. "In determining whether an injunction should issue against the employer, the focus is on preserving the arbitration process." Id. For the exception to apply, "[t]he underlying dispute must be subject to mandatory arbitration under the labor contract and the injunction must be necessary to prevent arbitration from being rendered a meaningless ritual." Id. (internal quotation

marks omitted). "If those elements are established, then the union must also satisfy the equitable test for a preliminary injunction." *Id.* The Court addresses each requirement in turn.

## I. Subject to Arbitration

■ The first inquiry in the *Bridgestone* analysis is whether the underlying dispute is subject to arbitration. *Id.* Here, the underlying dispute is whether the implementation of the 2017 Policy is within Essentia's exclusive management rights under the CBAs, as Essentia argues, or whether the 2017 Policy is subject to bargaining under the CBAs, as the USW argues. Because the parties agree that the underlying dispute is subject to arbitration under the CBAs, the USW satisfies the first requirement of the *Bridgestone* analysis.

## II. Frustration of Arbitration Process

■■ The second requirement in the *Bridgestone* analysis is whether a preliminary injunction is necessary to prevent arbitration from being rendered a meaningless ritual. *Id.* "The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction." *Niagara Hooker*, 935 F.2d at 1378. "The fact that the arbitration decision will not be able to restore perfectly the status quo ante is not enough; the injury must be irreparable and must threaten the integrity of the arbitration process itself." *Bridgestone*, 61 F.3d at 1354 (internal quotation marks omitted).

Here, the USW alleges that arbitration will not be able to remedy the following harms if the 2017 Policy is implemented:

loss of support from its membership, the termination of employees who refuse to receive vaccinations, and the violation of members' bodily autonomy through unwanted vaccinations.

The USW has not provided evidence that it actually faces loss of support from its members. In support of its motion for an injunction, the USW submitted the declarations of three Essentia employees who are USW members. None of the declarants expressed disappointment, frustration, or loss of confidence in the USW, questioned the USW's role in the implementation of the 2017 Policy, or even mentioned the USW. Nor does the USW provide legal authority to support its position that arbitration cannot remedy loss of support from its members. Based on the evidence presented, the USW has not demonstrated that loss of support from union members renders the arbitration process a meaningless ritual and, thereby, justifies a preliminary injunction.

■ Another potential harm advanced by the USW is loss of employment by those employees who do not receive a vaccination or request an exemption. Loss of employment can be remedied with reinstatement and back pay, however. *See Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) (finding no irreparable harm and denying injunctive relief because "[t]he loss of a job is quintessentially reparable by money damages"); *see also Niagara Hooker*, 935 F.2d at 1379 (finding that unilateral implementation of a policy that might result in terminations does not frustrate arbitration process because "the arbitrator may order reinstatement and backpay for an employee who is discharged or disciplined"); *Aluminum Workers Int'l Union, AFL–CIO, Local Union No. 215 v. Consolidated Alu-*

*minum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982) (vacating district court's preliminary injunction and distinguishing cases in which unions obtained injunctions because "[u]nlike the situation in those cases, there is no evidence in this record to suggest that [defendant] would be unable to comply fully with an order for backpay and reinstatement in the event the arbitrator found [defendant] in violation of the agreement"). For these reasons, the USW has not shown that loss of employment would render the arbitration process a meaningless ritual.

■ The USW also asserts that some employees will be harmed by receiving an unwanted vaccination, arguing that no favorable arbitration outcome can remedy harm to bodily integrity. This contention is insufficient for at least three reasons.

First, the 2017 Policy in no way mandates that employees be forcibly vaccinated. The USW frames the harm to its members as "forced vaccination," presuming that its members *feel* forced to receive vaccinations to preserve their jobs. The USW has presented nothing more than speculation that its members feel "forced" to receive vaccinations. One declarant had already received a medical exemption at the time of her declaration. The circumstances of the second declarant's statement are contested, as Essentia presents evidence that she received the vaccination prior to her declaration. And the third declarant merely stated that, despite a perceived medical risk, she was required to receive the vaccination or face termination. The record does not indicate whether the third declarant sought a medical exemption. The USW has not provided uncontested evidence of members who do not want the flu vaccination, feel coerced and, as a result, will choose to receive the vaccination if the 2017 Policy is not enjoined. The Court can only evaluate the evidence before it. Based on the evidence in the record, the USW has not established a risk that any particular member will be coerced into obtaining an unwanted vaccination.

Second, the USW has not established that an unwanted vaccination is an injury that "threaten[s] the integrity of the arbitration process itself." *Bridgestone*, 61 F.3d at 1354 (internal quotation marks omitted). In addition to the USW's failure to carry its evidentiary burden, the USW cites no legal authority supporting its position that its members face harm by voluntarily receiving vaccinations. The USW argues, correctly, that the Supreme Court of the United States has recognized a due process liberty interest in refusing unwanted medical treatment. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). But this liberty interest protects individuals from state action; it does not pertain to a labor dispute between two non-state actors. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.").

The USW's argument that the flu vaccination constitutes a safety risk is similarly unavailing. In support of this contention, the USW cites the 1970 decision by the Western District of Pennsylvania enjoining a metal foundry's unilateral implementation of a policy reducing the number of workers staffed to operate an open hearth furnace. *United Steelworkers of Am. AFL–CIO v. Blaw–Knox Foundry & Mill Mach., Inc.*, 319 F.Supp. 636, 640–42

(W.D. Pa. 1970). This decision lacks precedential value. Moreover, *Blaw–Knox* is distinguishable from the circumstances here. In concluding that arbitration could not remedy the harm the union faced, the *Blaw–Knox* court relied on testimony that the crew reduction presented a risk of serious and irreparable physical injury because a reduced crew might not be able to safely contain molten steel seeping from the furnace. *Id.* The USW analogizes the 2017 Policy to the policy in *Blaw–Knox* and asserts that, much like potential exposure to molten steel, the flu vaccination itself is a safety risk that constitutes irreparable harm that cannot be reversed by arbitration. This comparison is not persuasive. The union in *Blaw–Knox* filed one grievance objecting to the unilateral implementation of the crew reduction policy and a second grievance objecting to the contents of the policy on safety grounds, asserting that the policy created an unsafe work environment. *Id.* at 639. Here, by contrast, the USW's grievance pertains to the implementation of the 2017 Policy, but the grievance does not directly challenge the contents of the 2017 Policy on safety grounds. Indeed, the majority of Essentia employees chose to receive a flu vaccination under previous policies, which undermines the USW's argument that the vaccination is inherently unsafe. Moreover, Essentia issues medical exemptions to employees who cannot safely receive the vaccination. Even if the USW had provided evidence that some of its members do not want the flu vaccination but will receive it to save their jobs, this would not establish that a reluctantly received (but voluntary) vaccination presents a safety risk or constitutes the type of harm that threatens the integrity of the arbitration process.

Third, a USW member who receives a vaccination may nonetheless benefit from the arbitration proceeding. Although a favorable arbitration award cannot remove a vaccination from a recipient's body, it can provide the USW a seat at the bargaining table prior to the implementation of future flu vaccination policies. Under both the 2015 Policy and the 2017 Policy, flu vaccinations are required annually. A favorable arbitration award might allow an employee to opt out of future flu vaccinations. Moreover, "[t]he fact that the arbitration decision will not be able to restore perfectly the status quo ante is not enough; the injury must be irreparable *and* must threaten the integrity of the arbitration process itself." *Bridgestone*, 61 F.3d at 1354 (emphasis added) (internal quotation marks omitted). The USW has alleged multiple harms. A favorable arbitration decision could remedy the majority of those harms, as addressed above. The arbitration process retains meaning because the process will delineate the USW's and Essentia's bargaining rights under the CBAs, determine whether the 2017 Policy was prematurely implemented, and, if the USW receives a favorable outcome, redress the USW and its members for harms as well as prevent those harms from recurring in future years.

The USW has not demonstrated that an injunction is necessary to prevent arbitration from being rendered a meaningless ritual. For this reason, the Norris–La-Guardia Act applies, precluding injunctive relief in this instance. The Court, therefore, declines to analyze the equitable factors governing preliminary injunctions. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The USW's application for a preliminary injunction is denied.

## CONCLUSION

Based on the foregoing analysis and per the Court's November 9, 2017 Order, the

Court **DENIED** the USW's motion for an expedited preliminary injunction, (Dkt. 4).